438 P.2d 920

**Leo B. SNYDER, d/b/a Blue Cross Animal Hospital, Plaintiff-Respondent,**

**v.**

**STATE of Idaho and City of Boise, Defendants-Appellants.**

**No. 10103.**

Supreme Court of Idaho.

March 25, 1968.

Faber F. Tway, Chief Legal Counsel, and Anton Hohler, Asst. Legal Counsel, Idaho Dept. of Highways, Boise, for appellant, State.

Elbert E. Gass, Boise, for appellant, City of Boise.

William A. Stellmon, Lewiston, for City of Lewiston, amicus curiae.

Manweiler & Webb, Boise, for Ass'n of Idaho Cities, amicus curiae.

Robert W. Peterson, Moscow, for City of Moscow, amicus curiae.

Davison, Davison & Copple, Boise, for respondent.

SPEAR, Justice.

By this action plaintiff (respondent herein) seeks to recover damages on the theory of inverse condemnation alleging that defendants (appellants) have materially interfered with the right of access to his animal hospital. Appellants contend this is not the case and that respondent's damage, if any, is not compensable because it results from a lawful exercise of their police powers and does not involve loss of "access."

Respondent alleges that he is the owner of certain improved realty located at 2212 Main Street, Boise, Idaho, in which he operated a small animal veterinary hospital known as the Blue Cross Animal Hospital. For many years, access to said hospital (ingress and egress) for respondent and his customers was maintained by means of a curb cut in front of the building directly adjacent to Main Street whereby perpendicular parking was permitted. The complaint thereafter states:

"III

"The defendants have destroyed plaintiff's curb cut, installed curbing preventing use of the parking strip for perpendicular parking, and have forbidden any parking on Main Street at the address involved, parallel or otherwise.

"IV

"By reason of the defendants action, access to plaintiff's property by plaintiff and his customers has been materially damaged and impaired, requiring plaintiff [to] acquire additional land for parking and access to said hospital at his own expense."

The undisputed facts reveal that respondent is the owner of a certain tract of real property improved by a building used as an animal hospital. This building comes to within 5.50 feet of respondent's south prop-

erty line adjacent to Main Street which is also the north right of way line of Main Street and the building extends to within 4.10 feet of the respondent's west property line. The easterly wall of the building was located on the easterly property line. In other words, the hospital practically covered the entire frontage of respondent's property.

Easy access to the building was originally provided by means of a curb cut extending across the entire length of respondent's 50-foot frontage, whereby customers would pull in and park their cars either perpendicularly or diagonally. Cars so parked would normally project out into Main Street or upon the sidewalk. At that time, parallel parking was also permitted along Main Street. Respondent testified that this access was essential to his customers in order that they might transfer and carry their animals from car to hospital without undue inconvenience. Otherwise, it would be necessary for them to park their cars along the nearest north-south streets, i. e., 22nd or 23rd between Main and Idaho, as respondent's property could not accommodate off-street parking, i. e., vehicular access. This would, in his opinion, have ruined his business as a veterinary hospital.

It is undisputed that this curb cut lies entirely on public property, i. e., one of the streets in the City of Boise. The curb cut was maintained pursuant to a revocable permit regularly issued by the City of Boise to respondent's predecessor in title sometime prior to 1941. At that time Main Street dead-ended at the Boise River about one mile west of respondent's property and vehicular traffic was relatively light.

On July 20, 1964, the State of Idaho, by and through the Board of Highway Directors and the City of Boise, entered into a cooperative agreement for the construction of Federal Aid Project U–3021(21) and (22) which, among other things, provided for the inclusion of Main Street in front of respondent's hospital within the state highway system, thereby transforming the thoroughfare into a major arterial high-way. As a part of this agreement, parallel and angle parking were eliminated on Main Street east of 23rd Street. This was done in order to accommodate the increased flow of traffic and reduce the possible hazards occasioned by such parking.

Thereafter, it was necessary for a customer, in order to gain access to the hospital, to park either on 22nd or 23rd Street between Main and Idaho although I.C. § 49–521(d) would permit parking "temporarily for the purpose of and while actually engaged in loading or unloading." In order to alleviate this situation, respondent purchased twenty-five feet of property adjoining on the east side of his hospital and made it suitable for off-street parking and access. The City granted respondent vehicular access to this new property by providing, at no cost to respondent, a concrete driveway and a curb cut.

Respondent's expert witness, a real estate appraiser in Boise, testified that the highest and best use of this property, prior to the change in parking regulations, was as an animal hospital, but that afterwards this use would be terminated. He estimated respondent's damages (decrease in market value) to be $8,000, as a result of the loss of parking along Main Street.

The trial court found that by reason of appellants' actions (regulations), "access to plaintiff's property by plaintiff and his customers has been materially damaged and impaired," and rendered judgment against them for the sum of $8,000 and costs.

■■ Considering that the curb cut and parking strip formerly used by respondent's business customers were on public property, it is clear that there has been no taking of real property in the physical sense. While it appears that this curb cut was granted to respondent's predecessor in interest by a permit pursuant to city ordiance, the permit was revocable; and, additionally, such a permit to use public property for private use cannot create any private right, title or interest in said property in favor of the permittee. Boise City v. Sinsel, 72 Idaho 329, 241 P.2d 173 (1952);

Yellow Cab Taxi Service v. City of Twin Falls, 68 Idaho 145, 190 P.2d 681 (1948); Keyser v. City of Boise, 30 Idaho 440, 165 P. 1121, L.R.A.1917F, 1004 (1917). Nor can an abutting property owner acquire a right to use a portion of the highway right of way for a private business purpose by prescription or acquiescence. Bare v. Department of Highways, 88 Idaho 467, 401 P.2d 552 (1965); Yellow Cab Taxi Service v. City of Twin Falls, supra.

The factual basis of respondent's claim for damages lies, therefore, in the elimination of customer parking along Main Street, such parking being entirely upon public property.

■ The power to regulate parking, including the power to prohibit it, on public thoroughfares is delegated by statute to both local authorities and officials of the State Highway Department. I.C. §§ 49–529 and 49–758. Furthermore, this court has held that the power of cities and villages in this State over the streets under their jurisdiction is exclusive and unlimited. Yellow Cab Taxi Service v. City of Twin Falls, supra; Foster's, Inc. v. Boise City, 63 Idaho 201, 118 P.2d 721 (1941); Carson v. City of Genesee, 9 Idaho 244, 74 P. 862 (1903).

■ The supervision and control of traffic on city streets necessarily inheres within the police powers of a municipality:

" 'The right to use the public ways of the state, and the control of that use, being public in its nature, is a special subject for regulation under the police power of the state * * *.' "

[Citations omitted]

"The police power is a necessary concomitant to complete sovereignty and inheres primarily in the state. The exercise of that power, within the corporate limits of cities and villages, has been delegated to the respective municipalities. The full exercise of that power is one of the governmental duties of the respective municipalities as arms of the state, in preserving the health, safety and general welfare of the people." [Citations omitted] Foster's, Inc. v. Boise City, 63 Idaho 201 at 211, 118 P.2d 721 at 725 (1941).

More recently, this court has had occasion to consider the impact of such police powers upon an individual property owner and the consequence of such impact. In Johnston v. Boise City, 87 Idaho 44, at page 52, 390 P.2d 291, at page 295 (1964), this court stated:

"The exercise of authority under the police powers may, in certain instances, have a harmful effect upon an individual or property owner, but that alone is insufficient to justify an action for injunctive relief or for damages. If the enactment authorizing the exercise of the authority bears a reasonable relationship to the public health, safety, morals or general welfare, such enactment would be valid within the inherent powers of the legislative body. White v. City of Twin Falls, 81 Idaho 176, 338 P.2d 778. * * * If the exercise of the authority under such an enactment is reasonable and not arbitrary, any injury occasioned thereby must be considered a servitude inherent under our system of government, and damages from such injury must be considered as *damnum absque injuria*. [Citations omitted] * * *."

The interaction between volume and speed of traffic on the one hand and competition for parking spaces on the other has made it necessary for municipalities to cope with these problems through the exercise of its police regulatory powers. The decision to prohibit parking along a portion of this project on Main Street was neither capricious nor arbitrary in nature, but was the result of applying sound engineering judgment to cold hard facts in working out the solution of an existing problem.

■ Whether or not the owners of land abutting on a street or thoroughfare should be compensated when public officials turn parking lanes into travel lanes is a social question of considerable magnitude, as well

as a legal question. Clearly, all inconveniences resulting from changes in construction or regulation on public highways are not compensable in this state. See James v. State, By and Through Idaho Bd., etc., 88 Idaho 172, 397 P.2d 766 (1964); Johnston v. Boise City, supra; Mabe v. State ex rel. Rich, 86 Idaho 254, 385 P.2d 401 (1963).

In the face of this growing social problem it seems incongruous to yield to the demand for compensation by an individual when the regulation of traffic and parking, over which he admittedly has no control, somehow inconveniences him personally or has some effect upon the use of his property. Other courts have so recognized this to be true. See City of Phoenix v. Wade, 5 Ariz.App. 505, 428 P.2d 450 (1967); State v. Williams, 64 Wash.2d 842, 394 P.2d 693 (1964). The Washington court in State v. Williams, supra, stated:

> "Traffic regulations, including parking while loading and unloading, are police power regulations and are not a part of an abutting property owner's vested right of ingress and egress." At page 694.

The underlying theory authorizing a property owner to maintain an action for damages against the state or other public authority in the face of usual governmental immunity, is based on the constitutional provision that "private property may be taken for public use, but not until a just compensation * * * shall be paid therefor." Idaho Constitution, Art. 1 § 14. Unless a taking of private property, deprivation of access to property being an example thereof, is established, the action cannot be maintained. Bare v. Department of Highways, supra.

This is not a case where respondent is marooned on an island in a sea of traffic which is forever inhibited from stopping in the area. Parking is permitted on the cross-streets on both sides of the block in which his property is situated, as well as west of his property on Main Street. Moreover, I.C. § 49–521(d) permits parking for the temporary purpose of actually loading or unloading a vehicle. It must be remembered that prior to respondent's acquisition of the additional twenty-five feet of property adjoining the original property on the east, neither he nor his predecessor had any vehicular access to the property involved; and, therefore, the appellants can not be ·charged with having deprived him of any such access rights. ·

Under the facts as hereinabove delineated, respondent would have this court equate the right of vehicular access onto his property with the elimination of parking along the public thoroughfare in order to uphold his claim for compensable damages. We hold that respondent is in no better position than was the taxicab owner in Yellow Cab Taxi Service v. City of Twin Falls, 68 Idaho 145, 190 P.2d 681 (1948), where this court stated:

> "* * * The City, in the exercise of its police power, can revoke such license [permit to park on the public streets for a business purpose] if the particular thing permitted is or becomes a public nuisance, or such revocation is necessary and in the interests of the public welfare or public safety, and is not arbitrary, unreasonable, discriminatory, oppressive or capricious, and the conditions existing at the time justify such action." [Citations omitted] 68 Idaho at p. 151, 190 P.2d at p. 684.

Judgment of the trial court is reversed and the cause remanded with directions to dismiss the action with prejudice. Costs to appellants.

SMITH, C. J., and TAYLOR, McQUADE and McFADDEN, JJ., concur.