**INTERNATIONAL SOCIETY FOR KRISHNA CONSCIOUSNESS, INC. and Madhavananda, Plaintiffs,**

v.

**Alvan ENGELHARDT and Lou Beneke, Defendants.**

**No. 76 CV 436–W–4.**

United States District Court, W. D. Missouri, W. D.

Jan. 17, 1977.

Barry A. Fisher, Beverly Hills, Cal., David Russell, Gladstone, Mo., for plaintiffs.

Dan G. Jackson, III, Asst. City Atty., Kansas City, Mo., for defendants.

## MEMORANDUM AND ORDER

ELMO B. HUNTER, District Judge.

Plaintiffs move this Court for declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201–02. Specifically, plaintiffs seek an Order enjoining defendants from enforcing Article I, § 3.4 of the Code of General Ordinances of Kansas City, Missouri, respecting plaintiffs' proselytizing, selling religious literature, or soliciting donations in any portion of the Kansas City International Airport which is open to the general public.[1]

An evidentiary hearing was held in this cause on July 26, 1976, at which time the parties reached the following oral stipulation of facts:

### I

Plaintiff International Society for Krishna Consciousness, Inc. (ISKCON) is an international religious society which espouses the religious and missionary views of Krishna Consciousness. It is duly organized as a non-profit religious corporation under the laws of the State of Missouri and maintains temples and schools in cities throughout the United States and the world. Plaintiff Madhavananda, whose legal name is Michael Secrest, is a Hare Krishna priest and missionary, and President of the Detroit Temple of ISKCON. Defendant Engelhardt is the duly appointed Airport Safety Manager for the Kansas City Airports, charged with the implementation and enforcement of § 3.4 of the General Ordinances of Kansas City, which may include arrest and subsequent prosecution. Defendant Benecke is the City Prosecutor of Kansas City, Missouri, charged with enforcing the laws and ordinances of that city. The Kansas City International Airport is owned and operated by the City of Kansas City, Missouri.

The literature which plaintiffs desire to distribute and sell at the Kansas City International Airport is of a religious nature.[2] Plaintiffs seek to distribute and sell their literature, and to solicit contributions, only in those parts of the Kansas City International Airport which are open to the general public without restriction. Plaintiffs do not seek to dance, chant, or to engage in any similar conduct.

Plaintiffs have sought to proselytize at the Kansas City International Airport in the past, on several occasions, but have been told that they may not proselytize on the airport premises unless permission has been granted by the Airport Director pursuant to the Code of General Ordinances of Kansas City, Missouri, Article I, § 3.4.[3]

---

1. Defendants have filed Motions to Dismiss, asserting issues of standing, immunity, and failure to state a cause of action under § 1983. The Court finds defendants' motions to be without merit; accordingly the Motions to Dismiss filed by defendants Engelhardt and Benecke are hereby denied.

2. The Hare Krishna religion imposes on its members the duty to perform a religious ritual known as Sankirtan, which consists of disseminating and selling religious tracts and soliciting contributions in public places. Sankirtan is directed to spreading religious truth as it is known to the Hare Krishna religion, attracting new members, and supporting ISKCON's religious activities. According to the affidavit submitted by plaintiff Madhavananda, donations and book sales are "the very lifeblood and principal means of support of this religious movement."

3. § 3.4 provides that: "No person shall solicit funds for any purpose nor carry, distribute, display or post any signs, circulars, handbills or advertisements, nor conduct any business or

Plaintiffs have complied with these warnings and no arrests have been made. No devotee of ISKCON has ever been arrested for failure to have a license at the Kansas City Airport. Devotees of ISKCON have never sought the written permission of the Airport Director in order to perform Sankirtan at the airport.

The city ordinance here in question, § 3.4, remains in effect. It has been uniformly enforced against all groups, including plaintiffs as well as such other organizations as the Girl Scouts and the Boy Scouts. Although the Airport Director has permitted pickets against the airlines to use the sidewalks outside the terminal buildings, no personal solicitation for any reason by any other group has been allowed inside the terminal buildings or on the sidewalk outside the terminals since the construction of the Kansas City International Airport in 1972. Nor has any such solicitation been permitted at the older Kansas City Municipal Airport since 1964.

## II

Plaintiffs contend that § 3.4 on its face and as applied prohibits the distribution and sale of religious literature by members of a religious organization without a permit, and that the ordinance sets forth no narrow or definite standards by which a permit may be obtained. Thus plaintiffs urge that the absence of specific standards abridges the exercise of freedoms of speech and press, capriciously denies equal protection of the laws, and is vague, ambiguous and overbroad, all in violation of the First and Fourteenth Amendments to the United States Constitution.

Defendants contend that standards for the operation of the ordinance have been established by practice, because since 1964 no permits for solicitations have been granted.[4] Defendants further assert that

the public investment of over $250 million in the Kansas City International Airport for the purpose of providing efficient air transportation, the isolated location of the airport, and the physical environs of the terminal complex justify the prohibition against personal solicitation or sale of commodities on airport premises. Defendants assert, in addition, that the Kansas City International Airport is not a "First Amendment forum" so as to vest in plaintiffs the right to exercise their freedoms of religion, speech, or press.

## III

Plaintiffs have standing to maintain this action whether or not their conduct could be proscribed by a properly drawn ordinance and whether or not they ever have applied for a permit. *Freedman v. Maryland,* 380 U.S. 51, 56, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965); *Staub v. City of Baxley,* 355 U.S. 313, 78 S.Ct. 277, 2 L.Ed.2d 302 (1958); *Thornhill v. Alabama,* 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940); *ISKCON v. Lamb* (D.Nev.1975). In the area of First Amendment rights, it is well established that one need not have applied for a permit in order to challenge a statute on the ground that it delegates overly broad licensing discretion to an administrative officer. Standing is recognized in such cases because of the " . . . danger of tolerating, in the area of First Amendment freedoms, the existence of a penal statute susceptible of sweeping and improper application." *Freedman v. Maryland, supra* at 56, 85 S.Ct. at 738, citing *NAACP v. Button,* 371 U.S. 415, 433, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963).

Just as clearly, plaintiffs' desired conduct falls within and is protected by the First Amendment. *Murdock v. Pennsylvania,* 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292

concession by direct solicitation, by cruising airport streets or by any other means, nor peddle or expose any article or thing for sale upon the airport or upon or in any of its streets, sidewalks, buildings or other structures on the airport, without first obtaining the written permission of the Director of Airport."

4. Defendants do admit, however, that on at least one occasion the Airport Director has permitted picketing against the airlines on airport property.

(1943); *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Counsel,* 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976); *ISKCON v. Conlisk,* 374 F.Supp. 1010, 1015 (N.D.Ill.1973). Despite the fact that Kansas City International Airport is held by the city in a proprietary capacity, those portions of the airport which are open to the general public do constitute a protected First Amendment forum. *Kuszynski v. City of Oakland,* 479 F.2d 1130 (9th Cir. 1973); *Chicago Area Military Project v. City of Chicago,* 508 F.2d 921 (7th Cir. 1974); *ISKCON v. Lamb* (D. Nev.1975); *ISKCON v. Wetzel* (D.Ariz. 1975).[5] Moreover, the city ordinance here at issue, rather than being strictly prohibitory, does permit conduct such as that plaintiffs desire to perform upon the issuance of written permission by the Airport Director. Thus the ordinance, in essence, opens the forum so that ascertainable and reasonable standards for granting of permits must be applied evenly to all. See *Dulaney v. Municipal Court,* 11 Cal.3d 77, 112 Cal.Rptr. 777, 420 P.2d 1 (1974); *Hull v. Petrillo,* 439 F.2d 1184, 1185, 1186 (2d Cir. 1971).

On its face, the city ordinance here in issue contains no standards whatsoever to guide the Airport Director's discretion in permitting solicitations on airport premises. Because the city has opened this forum, and because plaintiffs' desired conduct is protected by the First Amendment, the right to carry out that conduct cannot constitutionally be left to the unbridled discretion of the licensor. *Cantwell v. Connecticut,* 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1 (1940); *Southeastern Promotions v. Conrad,* 420 U.S. 546, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975). While the right to engage in such conduct is not absolute,[6] an ordinance which operates to restrain the exercise of First Amendment freedoms must have narrow, objective and definite standards to guide the licensing authority. *Cantwell v. Connecticut, supra; Shuttlesworth v. Birmingham,* 394 U.S. 147, 151, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969). Precision of regulation must be the touchstone where First Amendment rights are involved. *NAACP v. Button,* 371 U.S. at 438, 83 S.Ct. 328, 9 L.Ed.2d 405. The fact that the Director routinely denies permits to all organizations does not render the ordinance acceptable where its unconstitutionality shows plainly on its face. The ordinance in question, Code of General Ordinances of Kansas City, Missouri, Article I, § 3.4, is unconstitutional because it prescribes no standards to limit the unbridled discretion of the licensing authority.

Defendants' argument that proselytizing by plaintiffs, together with solicitations by other organizations which would follow once such conduct were permitted, would disrupt efficient operations and obstruct passenger traffic in the airport is a matter which speaks to the *manner* in which the city may choose to regulate such conduct on airport premises,[7] rather than to a justifica-

---

**5.** Defendants contend that the location of the Kansas City International Airport, approximately 22 miles from downtown Kansas City, as well as the absence of numerous eating establishments, boutiques, and other public attractions, somehow makes this airport less of a public place than other airports. While it may be true that the majority of people present in the Kansas City International Airport will be air travellers and those greeting or bidding farewell to air travellers, this Court cannot accept the proposition that a public place used primarily in connection with air travel is accordingly not a public forum for purposes of the First Amendment to the United States Constitution. See *ISKCON v. Dallas-Ft. W. Reg. Air B.,* 391 F.Supp. 606 (N.D.Tex.1975), citing

*Marsh v. Alabama,* 326 U.S. 501, 506, 508, 66 S.Ct. 276, 90 L.Ed. 265 (1946).

**6.** Plaintiffs concede that their conduct may be subject to reasonable regulation concerning time, place, and manner in which their proselytizing may be performed. See *Cox v. Louisiana,* 379 U.S. 559, 85 S.Ct. 476, 13 L.Ed.2d 487 (1965); *CAMP v. Chicago,* 508 F.2d 921, 926 (7th Cir. 1975).

**7.** For purposes of this action, it is interesting to note the statement by counsel for defendants that while ISKCON itself might not impede ingress and egress at the airport, the city, fearing that others might try similar conduct, has prohibited all solicitations. The Court also notes plaintiffs' suggestion that the parties, without prejudice to either side undertake an

tion for a standardless ordinance. This Court must refrain from judicially legislating an acceptable regulation for the conduct which plaintiffs desire to perform at the Kansas City International Airport; that task belongs to the city council. Whether or not the ordinance which the city council ultimately may adopt will be constitutionally permissible may be a question for another day. See *ISKCON v. City of New Orleans,* 347 F.Supp. 945 (E.D.La.1972); *ISKCON v. Conlisk,* 374 F.Supp. 1010 (N.D.Ill. 1973).

Accordingly, for the foregoing reasons, it is hereby

ORDERED that the Code of General Ordinances of Kansas City, Missouri, Article I, § 3.4, on its face is unconstitutional, in violation of the First and Fourteenth Amendments to the United States Constitution, and is hereby declared to be null, void, and enforcement thereof shall be, and is hereby, forever enjoined.

Each party shall bear its own costs.

experimental arrangement, under controlled conditions, for proselytizing at the Kansas City International Airport. Defendants declined to participate in such an experiment. The Court further notes that the City of Kansas City has had ample opportunity since the filing of this action to amend its ordinance.