INTERNATIONAL SOCIETY FOR KRISHNA CONSCIOUSNESS, INC., and Gopa Bhatta, on behalf of themselves and all International Society for Krishna Consciousness members, Plaintiffs,

v.

Michael W. WOLKE, Milwaukee County Sheriff, E. Michael McCann, Milwaukee District Attorney, Individually and in their official capacities, and Milwaukee County, Defendants.

Civ. A. No. 76–C–293.

United States District Court,
E. D. Wisconsin.

July 19, 1978.

Barry A. Fisher, Beverly Hills, Cal., Stephen N. Glynn, Milwaukee, Wis., for plaintiffs.

Robert P. Russell, Corp. Counsel, James J. O'Donnell, Asst. Corp. Counsel, Milwaukee, Wis., for defendants.

## DECISION AND ORDER

REYNOLDS, Chief Judge.

In this civil rights action, plaintiffs seek declaratory and injunctive relief under 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201–2202. Jurisdiction of this court is founded on 28 U.S.C. § 1331 (federal question) and § 1343(3) (civil rights). The plaintiffs, International Society for Krishna Consciousness, Inc. (hereinafter "ISKCON") and Gopa Bhatta (also known as Gregory K. Stein), attack Milwaukee County Ordinance § 4.02 as unconstitutional, both on its face and as applied to them. Section 4.02 requires persons seeking to sell or distribute printed or written matter or to engage in any form of solicitation on the premises of the county's airports to first secure written permission from the airport director. Plaintiffs allege that the ordinance is a standardless licensing law in violation of the First and Fourteenth Amendments to the United States Constitution because it fails to provide narrow and objective standards to govern the issuance of the required permits.

In May of 1976, a preliminary injunction was entered restraining defendants from arresting plaintiffs, or their membership, for violation of the ordinance where they are soliciting donations or sales of literature or disseminating literature or information in those areas of General Mitchell Field (hereinafter "GMF") generally open to the public.

The case is presently before the court on plaintiffs' motion for summary judgment. The plaintiffs' motion will be granted for the reasons stated herein.

## I.

ISKCON is an international organization espousing the tenets of the Hare Krishna religion. It is duly organized under the laws of the State of New York as a nonprofit religious corporation and operates throughout the world. Among the rituals imposed by the Hare Krishna religion on its members is "Sankirtan," which consists of proselytizing, soliciting donations, and distributing Krishna literature in public places. This practice has the threefold purpose of spreading religious truth as known to the Hare Krishna religion, attracting new members, and generating funds for support of the religious movement.

Plaintiff Gopa Bhatta, whose legal name is Gregory K. Stein, is Sankirtan leader of the Chicago temple of ISKCON.

Defendant Michael S. Wolke is the sheriff of Milwaukee County and is charged with implementation and enforcement of Milwaukee County ordinances, including § 4.02.

Defendant E. Michael McCann is District Attorney of Milwaukee County and is charged, *inter alia*, with the prosecution of violators of § 4.02.

Defendant Milwaukee County owns and operates General Mitchell Field.

In April of 1976 and before, plaintiff Gopa Bhatta and other Krishna devotees attempted to proselytize in public areas of GMF, including solicitation of book sales and donations. Officers of the sheriff's department told Bhatta and the others that they could not continue unless they obtained the permission of the airport director pursuant to § 4.02. Plaintiffs complied and no arrests were made.

## II.

Section 4.02 provides, *inter alia*, that:

"No person shall use the County's airports or any portions thereof for the conduct of a commercial enterprise, or other form of revenue producing activity, without first obtaining authorization therefor from the proper authorities of Milwaukee County by means of a written agreement, lease, license, or permit and paying the

rentals, fees and charges as established therefor."

The ordinance further provides that:

"No person or organization of any nature shall post, distribute or display, including without restriction because of enumeration, signs, advertisements, literature, circulars, pictures, sketches, drawings or other forms of printed or written matter or engage in any form of solicitation upon the premises of the County's airports without prior written permission secured from or through the Airport Director, as may be required."

Plaintiffs allege that because the permit system established under the ordinance vests discretion in the airport director to grant or deny licenses for the exercise of First Amendment rights without definite, narrow, and objective standards, it "substantively and procedurally abridges the exercise of freedoms of speech and press, arbitrarily deprives persons of their liberty and property without due process of law, capriciously denies the equal protection of the laws, and is vague, ambiguous and overbroad, all in violation of the First and Fourteenth Amendments to the United States Constitution." (Plaintiffs' memorandum in support of motions for temporary and preliminary injunction, filed April 30, 1976.)

Defendants contend that the passageways and corridors of the terminal building at General Mitchell Field are "so narrow and overcrowded as to not constitute an appropriate forum for the exercise of First Amendment rights" and that "[b]ased on said facts * * * plaintiffs have no basic absolute constitutional right to solicit in the terminal building of GMF or to exchange literature or other items for charitable donations." (Defendants' memorandum in opposition to plaintiffs' motion for summary judgment, filed Nov. 10, 1977, at 2–3.) Defendants urge that the question of whether the airport terminal building is a "public forum" is one to be developed at the time of trial and not at the summary judgment stage.

### III.

Plaintiffs have standing to maintain this action whether or not their conduct could be proscribed by a properly drawn ordinance and whether or not they ever applied for a permit. *Freedman v. Maryland*, 380 U.S. 51, 56, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965); *International Society for Krishna Consciousness, Inc. v. Engelhardt*, 425 F.Supp. 176, 179 (W.D.Mo.1977).

It is also clear that the conduct plaintiffs seek to perform is within the scope of the First Amendment's protection. The First Amendment, made binding on the states by the Fourteenth Amendment, declares that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press * * *." This protection of religious expression is not removed by the incidental solicitation of donations or sales. *Murdock v. Pennsylvania (City of Jeannette)*, 319 U.S. 105, 112, 63 S.Ct. 870, 87 L.Ed. 1292 (1943); *International Society for Krishna Consciousness, Inc. v. Conlisk*, 374 F.Supp. 1010, 1015 (N.D.Ill.1973).

### IV.

Defendants contend that even if the activities of the plaintiffs are protected First Amendment acts, a material question of fact existed as to whether GMF is a public forum for First Amendment purposes.

A motion for summary judgment can be granted only if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c), Federal Rules of Civil Procedure.

Based on the undisputed evidence in this case and numerous cases in point, this Court is prepared to hold as a matter of law that those areas of the terminal building at General Mitchell Field which are generally open to the public constitute a public forum.

To begin, the airport terminal is a publicly owned facility. Defendants urge

that the mere fact of public ownership does not by itself require that a building be available as a public forum. This Court does not deny this general proposition. Prisons, hospitals, office buildings, and other public facilities frequently require regulations to ensure that free speech activities do not unreasonably interfere with their functions. In *Adderley v. Florida*, 385 U.S. 39, 87 S.Ct. 242, 17 L.Ed.2d 149 (1966), for example, the Supreme Court upheld the application of a Florida trespass statute to bar a student demonstration on the premises of a jail. There the Court noted that jails are built for security reasons, and that the state has the power to preserve the property under its control for the use to which it is lawfully dedicated.

■ But the conclusion that a building owned by the public is unavailable as a public forum cannot be hastily drawn. Indeed, no restriction of free expression in public places can be made without "weighty reasons." *Grayned v. City of Rockford*, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). In *Amalgamated Food Employees Union Local 590 v. Logan Valley Plaza, Inc.*, 391 U.S. 308, 88 S.Ct. 1601, 20 L.Ed.2d 603 (1968), the Court found First Amendment protection to attach on a privately owned shopping center that was generally open to the public. The Court, in the case just cited, reviewed the forum issue under the First Amendment, stating at 315, 88 S.Ct. at 1607:

" * * * [S]treets, sidewalks, parks, and other similar public places are so historically associated with the exercise of First Amendment rights that access to them for the purpose of exercising such rights cannot constitutionally be denied broadly and absolutely."

Defendants refer the Court to only one case where a flat denial of the use of a public place as a free speech forum was countenanced by the Supreme Court. But that case, *Greer, Commander, Fort Dix Military Reservation v. Spock*, 424 U.S. 828, 96 S.Ct. 1211, 47 L.Ed.2d 505 (1976), concerned a bar on political campaigning on a United States Army base, Fort Dix. The Court in

*Greer* took pains to explain the "special constitutional function of the military in our national life." 424 U.S. at 837, 96 S.Ct. at 1217. Outside that unique arena, the Courts have consistently held public buildings to be generally available for First Amendment expression but subject to specific restrictions on time, place, and manner.

In *Wolin v. Port of New York Authority*, 392 F.2d 83 (2d Cir. 1968), the Second Circuit held the Manhattan bus terminal to be a public forum for First Amendment purposes, despite its primary purpose of facilitating the movement of travelers. Recognizing the functional resemblance of the terminal building to a street, the Court observed at 89:

" * * * The fifty foot walk is lined with stores and concessionaires, crowded at some hours and less dense at others. * * * [T]he terminal, with its many adjuncts, becomes something of a small city—but built indoors, with its 'streets' in effect set atop one another. * * * "

Similarly, the Seventh Circuit held the city-owned common areas of O'Hare airport "which resemble those public thoroughfares which have been long recognized to be particularly appropriate places for the exercise of constitutionally protected rights to communicate ideas and information" to constitute a public forum. *Chicago Area Military Project v. City of Chicago*, 508 F.2d 921, 925 (7th Cir. 1975).

In a case also brought by ISKCON and presenting substantially identical issues, the District Court for the Northern District of Illinois held that "[w]ithout question, the First and Fourteenth Amendments apply to government-owned airports like Meigs, Midway and O'Hare." *International Society for Krishna Consciousness, Inc. v. Rochford*, 425 F.Supp. 734, 740 (N.D.Ill.1977).

Defendants contend that since the conditions existing at GMF are unique, these cases should be distinguished on their facts. Defendants point particularly to the rapid increase in passenger volume and in the number of nonpassengers using the airport daily. (An increase in annual passenger

traffic of almost five hundred·per cent over a sixteen-year period is noted in the affidavit of the airport director.) All of these passengers must pass through an eighteen-foot wide passageway.

The Court is not unmindful of the difficulties created by the rapidly expanding use of public facilities. But defendants' argument that plaintiffs' activities disrupt the flow of passenger traffic misses the mark.

■ Crowded conditions may require restrictions to ensure the efficient operation of the airport. But these conditions cannot support the sweeping prohibition of free speech implicit in finding that the airport is not a public forum.

Moreover, the ordinance at issue does not strictly prohibit free speech activities but allows them upon issuance of a permit. The establishment of such a permit system clearly contemplates some situations in which First Amendment activities would be permitted. The ordinance, in essence, "opens the forum." *International Society for Krishna Consciousness, Inc. v. Engelhardt*, 425 F.Supp. 176, 180 (W.D.Mo.1977).

■ Our conclusion that GMF is a public forum does not mean that free speech activities there are protected absolutely. Reasonable ·"time, place and manner" regulations may be enacted as necessary to further a significant governmental interest. *Grayned v. City of Rockford*, 408 U.S. 104, 115, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972).

■ Milwaukee County Ordinance § 4.02 contains no standards to guide its application. Rather, it vests discretion for decisionmaking in the hands of the airport director. The law concerning such an uncontrolled grant of discretion is clear. " * * * [A] law subjecting the exercise of First Amendment freedoms to the prior restraint of a license, without narrow, objective, and definite standards to guide the licensing authority, is unconstitutional." *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 150–151, 89 S.Ct. 935, 938, 22 L.Ed.2d 162 (1969). This principle was recently reapplied in *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 553, 95 S.Ct. 1239, 1244, 43 L.Ed.2d 448 (1975);

"Invariably, the Court has felt obliged to condemn systems in which the exercise of such authority was not bounded by precise and clear standards. The reasoning has been, simply, that the danger of censorship and of abridgment of our precious First Amendment freedoms is too great where officials have unbridled discretion over a forum's use. Our distaste for censorship—reflecting the natural distaste of a free people—is deep-written in our law."

Since § 4.02 provides no standards whatsoever to guide the airport director's decision, *a fortiori*, the standards cannot meet the test of "narrow, objective and definite." The ordinance is therefore declared to be unconstitutional as violative of the First Amendment to the United States Constitution.

IT IS THEREFORE ORDERED that the motion of the plaintiffs International Society for Krishna Consciousness, Inc., and Gopa Bhatta for summary judgment is granted.

IT IS FURTHER ORDERED that the preliminary injunction of this Court dated May 6, 1976, is made permanent.