716 P.2d 1273

Norbert KLEIBER, Plaintiff-Appellant, Cross Respondent,

v.

CITY OF IDAHO FALLS, State of Idaho, a municipal corporation, Defendant-Respondent, Cross Appellant.

No. 15758.

Supreme Court of Idaho.

Feb. 19, 1986.

Rehearing Denied April 23, 1986.

---

**502**

Marc J. Weinpel and James F. Combo, Idaho Falls, for plaintiff-appellant, cross-respondent.

Allyn L. Sweeney and Gregory R. Giometti, Boise, for defendant-respondent, cross-appellant.

SHEPARD, Justice.

This is an appeal from a summary judgment dismissing the complaint of appellant Kleiber who sought damages under the theories of common law tort and a violation of his constitutional rights under 42 U.S.C. Section 1983 which allegedly resulted from the city's refusal to allow Kleiber to operate a mobile hot dog stand on the sidewalks of downtown Idaho Falls. We *affirm.*

In May 1982 Kleiber applied to the city of Idaho Falls for a business license to operate a mobile hot dog stand in downtown Idaho Falls. Kleiber indicated that he was unsure where his stand would be located but that he intended to operate at various locations throughout the city. It is asserted by the city that Kleiber was told he would be in violation of City Ordinance No. 9–9–1 if he attempted to operate his business on a public sidewalk.[1] Kleiber denies that he received any such warning. A license was issued and Kleiber began operating his business on public sidewalks. Shortly thereafter the police warned Kleiber he was violating Ordinance No. 9–9–1, and thereafter began issuing citations to him for obstructing the sidewalk in violation of the ordinance. Kleiber nevertheless continued to operate the stand and receive citations. Thereafter, at a regular meeting of the Idaho Falls City Council, over the protests of Kleiber, the council voted to revoke his license. The council also informed Kleiber that if he would agree to conduct the business on private property it would reinstate his license. Subsequently Kleiber acquired a location for his business on private property and his license was reinstated.

Thereafter, Kleiber filed this action against the city alleging both common law tort and 42 U.S.C. Section 1983 causes of actions, to which the city filed a motion for summary judgment. The district court granted summary judgment as to the tort claims, but denied summary judgment as to the Section 1983 claim holding that the ordinance was unconstitutionally vague. Upon a motion to reconsider, the court adhered to its ruling that the ordinance was unconstitutionally vague, but held that the city was also entitled to summary judgment as to the Section 1983 cause of action since neither a fundamental first amendment right nor a property right was implicated.

Kleiber filed a motion asking for reconsideration of the court's summary judgment relating to the 1983 causes of action,

---

1. 9–9–1: UNLAWFUL TO OBSTRUCT SIDE-WALKS:
(A) Obstructing streets, alleys and sidewalks. It shall be unlawful for any person to obstruct any street, alley or public sidewalk within the city.
(B) Structures on sidewalks. It shall be unlawful for any person to store, install or maintain any material, vehicle, structure or fixture upon any public sidewalk within the city, except as hereinafter in this chapter set forth.

(C) Exceptions. The following structures or fixtures may be installed and maintained in and on a public sidewalk in compliance with the following standards:
(1) All utility poles and equipment, fire hydrants, traffic signs and signals, benches, receptacles for decorative trees and plants, and all other structures, receptacles and fixtures installed or placed with the approval of the State, or of the city are deemed to conform to acceptable standards, and are lawful.

to which the city filed a motion to strike on the basis that the motion to reconsider was not filed within ten days as required by I.R.C.P. 59(e). That motion to strike was denied and the court issued a decision on the merits. Since we decide the case on its merits, we do not address the issue of the timeliness of Kleiber's motion to reconsider.

We note initially that Kleiber's sole issue on appeal is the granting of summary judgment on the Section 1983 claim. No contention is made upon appeal as to the granting of summary judgment in favor of the city on Kleiber's common law tort claim, and Kleiber has cited neither authority nor made argument upon that question. *See V-1 Oil Company v. Lacy,* 97 Idaho 468, 546 P.2d 1176 (1976); *Oregon Shortline Railroad Co. v. City of Chubbuck,* 93 Idaho 815, 474 P.2d 244 (1970).

As stated in *Stewart v. Hood Corporation,* 95 Idaho 198, 506 P.2d 95 (1973):

"In ruling on an appeal from a summary judgment we will only determine:
1. Whether there is a genuine issue as to any material fact; and
2. Whether the moving party is entitled to judgment as a matter of law." (Citations omitted.)

We hold that here the trial court correctly ruled that no genuine issue of *material* fact remained to be resolved. The only dispute of fact is whether Kleiber was notified of Ordinance No. 9-9-1 and that he could not operate his business on a sidewalk. However, that dispute of fact is not material since the city is not estopped from enforcing its ordinance, albeit the license may have been issued by mistake or in contravention of the ordinance.

■ The application of estoppel against a municipality in the exercise of its police power is prohibited. *Boise City v. Sinsel,* 72 Idaho 329, 241 P.2d 173 (1952); *Yellow Cab Taxi Service v. City of Twin Falls,* 68 Idaho 145, 190 P.2d 681 (1948). We stated in *Harrell v. City of Lewiston,* 95 Idaho 243, 247, 506 P.2d 470, 474 (1973), "although a municipality may be estopped

in limited circumstances, the enactment of zoning regulations is a governmental function which is not usually subject to estoppel." In *Harrell* the facts were much more egregious than in the instant case. There the plaintiff had deeded property for a frontage road to the city in reliance on its proposal that if he did so he would be granted a zone change and a building permit for a restaurant. In *Harrell,* clearly the plaintiff had changed his position to his substantial detriment in reliance upon the city's assurances, yet no right to a building permit was held to exist when a valid zoning regulation prohibited such use. Although in the instant case Kleiber may have been issued a business license, such license did not confer upon him any property right to use the public sidewalks for the conduct of his business. Therefore, the city was entitled to judgment as a matter of law.

■ In Idaho the streets from side to side and end to end belong to the public and are held by the municipality in trust for the use of the public. *Keyser v. City of Boise,* 30 Idaho 440, 165 P. 1121 (1917). A city has exclusive control by virtue of its police power over its streets, highways and sidewalks within the municipal boundaries. *Tyrolean Associates v. City of Ketchum,* 100 Idaho 703, 604 P.2d 717 (1979); *City of Nampa v. Swayne,* 97 Idaho 530, 547 P.2d 1135 (1976); *Snyder v. State,* 92 Idaho 175, 438 P.2d 920 (1968); *Yellow Cab Taxi Service v. City of Twin Falls,* 68 Idaho 145, 190 P.2d 681 (1948). In *Boise City v. Sinsel, supra,* the Court held that the holder of a permit to install an obstruction on the public street acquires no vested property right because the city has no right or authority to grant a private right to permanent use of the public streets.

Likewise, in *Yellow Cab Taxi Service v. City of Twin Falls, supra,* the Court held:
"A city, in the exercise of its police power, can revoke a license if the particular thing permitted is or becomes a public nuisance, or such revocation is necessary and in the interests of the public welfare or public safety, and is not arbitrary,

unreasonable, discriminatory, oppressive or capricious, and the conditions existing at the time justify such action." 68 Idaho at 151. (Citations omitted.)

Here there is no showing by Kleiber that the action of the city is unreasonable, arbitrary or discriminatory. The evidence reveals that no licenses are issued for the operation of pushcarts on the sidewalks of the city of Idaho Falls. While there is evidence which indicates that at certain times of the year the city allows all of the merchants to conduct what are commonly referred to as "sidewalk sales," such is not indicative of any abrogation of authority on the part of the city to prohibit the use of sidewalks for the conducting of businesses at all other times. The evidence is also clear that during such time of "sidewalk sales" Kleiber was permitted to operate his stand on the public sidewalks, as were other merchants.

The ultimate issue herein is whether Kleiber, by purchasing a business license from the city of Idaho Falls, obtained a vested or fundamental right to conduct a business on the public sidewalks, and whether the revocation of that license contravened Kleiber's constitutional rights.

We emphasize that Kleiber asserts only a constitutional right to conduct a private commercial business on the public sidewalks of the city, and that there are not implicated the constitutional rights of freedom of speech, freedom of assembly, or freedom of religion. See *N.A.A.C.P. v. State of Alabama, ex rel. Patterson*, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958); *Murdock v. Commonwealth of Pennsylvania*, 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed.2d 1488 (1943); *Cantwell v. State of Connecticut*, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940); *International Society for Krishna Consciousness v. Engelhardt*, 425 F.Supp. 176 (W.D.Mo.1977).

As in *Yellow Cab, supra,* the city here, by granting plaintiff a business license, did not confer upon him any vested right to use the sidewalk as a place of business. In *Yellow Cab* plaintiff had paid the city $240.00 for a 12-month license to operate a taxi service in Twin Falls and to maintain a certain taxi stand on Main Street. He had been operating that taxi service for approximately 16 years. When the city no longer permitted him to use that taxi stand he filed suit to enjoin the city from interfering with his use, and to quiet title to his use of the stand. That action was dismissed for failure to state a cause of action, and on appeal the dismissal was affirmed with this Court stating that no one has a vested right to use a public street for private gain.

The power of cities to prohibit the use of public sidewalks for commercial vending activities has been upheld against constitutional challenge in many jurisdictions. See *San Francisco Street Artists Guild v. Scott*, 37 Cal.App.3d 667, 112 Cal.Rptr. 502 (1974); *Duchein v. Lindsay*, 42 A.D.2d 100, 345 N.Y.2d 53 (Sup.Ct.1973); *People v. Galena*, 24 Cal.App.2d Supp 770, 70 P.2d 724 (1937).

The city also asserts that the trial court erred in holding Ordinance No. 9–9–1 to be vague, indefinite and hence void. *Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982) stated:

"In a facial challenge to the overbreadth and vagueness of a law, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct. If it does not, then the overbreadth argument must fail. The court should then examine the facial vagueness challenge and, assuming the enactment implicates no constitutionally protected conduct, should uphold the challenge only if the enactment is impermissibly vague in all of its applications. A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." 455 U.S. at 494, 495, 102 S.Ct. at 1191.

The court further held:

"The degree of vagueness that the Constitution tolerates—as well as the relative importance of fair notice and fair enforcement—depend in part on the na-

ture of the enactment. Thus, economic regulation is subject to a less strict vagueness test because its subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action." 455 U.S. at 498–99, 102 S.Ct. at 1193–94.

■ The standards set forth in *Hoffman* are significant to the instant case in that Ordinance No. 9–9–1 does not implicate any constitutional right, nor does it infringe upon a fundamental right under state law. As in *Hoffman*, Kleiber in this case, is also a businessman who had an opportunity to clarify the meaning of the regulation. Ordinance No. 9–9–1 clearly prohibits the obstruction of public sidewalks within the city, or the maintenance of any vehicle upon a public sidewalk within the city. Equally clearly, Kleiber's maintenance of a pushcart on a sidewalk within the city consists of an obstruction of the sidewalk and the maintenance of a vehicle of a type, and thus is prohibited by the ordinance. The fact that the ordinance might also be construed to prohibit other activities which are not engaged in by Kleiber, does not allow him to sustain a challenge to the ordinance. Ordinance No. 9–9–1 does not address the conduct of a lawful business in a lawful manner, but only regulates activities on public streets or sidewalks. Although Kleiber may have a fundamental right of a sort to operate a business, such right does not extend to the operation of his business on city streets or sidewalks. The orders granting summary judgment to the city, and dismissing the complaint of Kleiber are affirmed. A holding of the district court that City Ordinance No. 9–9–1 is vague, ambiguous and void is reversed.

Costs to respondent.

DONALDSON, C.J. and BAKES, J., concur.

1. Interestingly, Justice Huntley and I, working entirely independently on our separate opin-

BISTLINE, Justice, dissenting.

## I.

The majority's void-for-vagueness analysis errs in two respects. First, it ignores state constitutional law and applies only federal constitutional law. Second, it applies the wrong analysis to the issues raised in this case. In that manner the wrong result is obtained.

The heart of Mr. Kleiber's appeal is that the City's ordinance 9–9–1 is unconstitutionally vague. Kleiber also contends that the ordinance is arbitrary and capricious, and invites selective enforcement.[1] The ordinance in question is:

9–9–1: UNLAWFUL TO OBSTRUCT SIDEWALKS:

(A) Obstructing streets, alleys and sidewalks. It shall be unlawful for any person to obstruct any street, alley or public sidewalk within the city.

(B) Structures on sidewalks. It shall be unlawful for any person to store, install or maintain any material, vehicle, structure or fixture upon any public sidewalk within the city, except as hereinafter in this chapter set forth.

(C) Exceptions. The following structures or fixtures may be installed and maintained in and on a public sidewalk in compliance with the following standards:

(1) All utility poles and equipment, fire hydrants, traffic signs and signals, benches, receptacles for decorative trees and plants, and all other structures, receptacles and fixtures installed or placed *with the approval* of the State, or *of the city are deemed to conform to acceptable standards, and are lawful.*

The district court agreed with Mr. Kleiber and provided the parties with its reasoning:

The void for vagueness doctrine requires that a statute or ordinance define prohibited conduct with sufficient definitions that ordinary people can understand what activity is proscribed so that they may conform to the requirements of the

ions, have both observed the potential for selective enforcement of the ordinance.

law, and in a manner which does not encourage arbitrary and discriminatory enforcement. *Kolender v. Lawson,* [461] U.S. [352], 103 S.Ct. 1855 [75 L.Ed.2d 903] (1983); *Village of Hoffman Estates v. Flipside,* 455 U.S. 489, 102 S.Ct. 1186 [71 L.Ed.2d 362] (1982); *Voyles v. City of Nampa,* 97 Idaho 597, 548 P.2d 1217 (1976). As noted by the Supreme Court in *Kolender,* 103 S.Ct. at 1858,

> Although the doctrine focuses both on actual notice to citizens and arbitrary enforcement, we have recognized recently that the more important aspect of vagueness doctrine "is not actual notice, but the other principal element of the doctrine—the requirement that a legislature establish minimum guidelines to govern law enforcement." *Smith [v. Goguen], supra,* 415 U.S. [566] at 574, 94 S.Ct. [1242] at 1247–1248. Where the legislature fails to provide such minimal guidelines, a criminal statute may permit "a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections." *Id.* at 575, 94 S.Ct. at 1248.

An examination of the ordinance involved here reveals that while it is declared to be unlawful to maintain vehicles or structures upon public sidewalks, certain exceptions are provided for. Supposedly the ordinance provides for exceptions for structures meeting certain standards, but a closer view shows that the section (9–9–1(C)) merely lists a number of items which are excepted and states that "structures, receptacles and fixtures installed or placed with the approval of the State, or of the city are deemed to conform to acceptable standards, and are lawful." No standards are given by which city or state approval may be obtained. This appears to be the very type of "arbitrary and discriminatory enforcement" which the U.S. Supreme Court condemned under the void-for-vagueness doctrine.

A closely analogous case is that of *International Society for Krishna Consciousness, Inc. v. Englehardt,* 425 F.Supp. 176 (W.D.Mo.1977). In that case, a member of a religious society brought a 1983 action seeking to enjoin the enforcement of a city ordinance prohibiting soliciting and distribution of handbills at the municipal airport without written permission of the airport director. The Court held that the city could, if it wished, absolutely prohibit solicitation at the airport, but having provided for exceptions, some standards must be established for granting those exceptions:

> On its face, the city ordinance here in issue contains no standards whatsoever to guide the Airport Director's discretion in permitting solicitations on airport premises. Because the city has opened this forum, and because plaintiff's desired conduct is protected by the First Amendment, the right to carry out that conduct cannot constitutionally be left to the unbridled discretion of the licensor.... The fact that the director routinely denies permits to all organizations does not render the ordinance acceptable where its unconstitutionality shows plainly on its face.

425 F.Supp. at 180.

Similarly, in the instant case *the ordinance provides for exceptions to the rule, but provides no standards* for granting of those exceptions, *leaving them rather, to the "unbridled discretion" of the city council.* And while the case above did deal with important First Amendment rights, the right to engage in a lawful business enjoys constitutional protection as a right existing under fundamental law. *See e.g., Messerli v. Monarch Memory Gardens, Inc.,* 88 Idaho 88, 397 P.2d 24 [34] (1964).

The defendant City asserts the proposition that a license issued by mistake or contrary to its own ordinances can be revoked. I do not take issue with this proposition (which the City has appropriate authority to sustain), but I think it is clear that in the revocation process the

licensee is entitled to due process of law. R., pp. 67–68 (emphasis added).

The majority opinion ignores the district court's opinion as though it had never been written, and instead launches into an inapplicable quotation from the *Flipside* case. It is said that because Ordinance 9–9–1 does not infringe upon any constitutional right, it it is therefore constitutional. P. 1277. It is much to be doubted that even the city will be impressed by such a circuitous, shallow argument.

A correct analysis of this issue inevitably leads to the conclusion that the district court was correct in holding the ordinance is unconstitutionally vague *as applied* to the conduct with which Kleiber was *charged*. The district court also seems to have been of the view that the ordinance would not have withstood a challenge for facial vagueness.

Controlling state constitutional law from *State v. Newman*, 108 Idaho 5, 696 P.2d 856 (1985) is applicable. There this Court addressed a challenge to the constitutionality of Idaho's Drug Paraphernalia Act,[2] with the issue being whether the Act was unconstitutionally vague *on its face*. We applied the reasoning of *Flipside* in holding that the Act did not violate *federal* standards for *facial* void-for-vagueness challenges. *Id.* at 12–15, 696 P.2d at 862–65.

Great pains were taken to point out that *Flipside* involved a federal *facial* void-for-vagueness challenge, and that facial challenges differ from as-applied vagueness challenges:

> We do not wish to be understood as suggesting that this test is also the appropriate test to be used in cases where a statute, *as applied* to a particular individual in light of the conduct with which he or she is being charged, is being challenged as being vague. On the contrary, standards governing constitutional challenges to acts *as applied* to an individual

are not as difficult to meet as those governing facial challenges. *See* 69 A.L. R.Fed. at 29 § 3(b). *Id.* at 12, n. 11, 696 P.2d at 862, n. 12.

The reason for this distinction is readily apparent. As noted in *Newman*, citing to *Flipside*:

> The test for finding a statute void-for-vagueness on its face, and thereby in violation of due process, is whether the law is impermissibly vague in *all* of its applications. *Flipside, supra,* 455 U.S. at 498, 102 S.Ct. at 1193. That is, whether the Act is invalid *in toto*. *Steffel [v. Thompson]*, 415 U.S. [452,] 474, 94 S.Ct. [1209,] 1223 [ (1974) ]. *Id.* at 12, 696 P.2d at 862 (emphasis original).

Justice Shepard has recognized this distinction before. In *State v. Carringer*, 95 Idaho 929, 930, 523 P.2d 532, 533 (1974), he said for a majority of the Court:

> Common to most if not all vagueness cases is *the principle that the words of the questioned statute should not be evaluated in the abstract but should be considered with reference to the particular conduct of the defendants. United States v. National Dairy Products Corp.*, 372 U.S. 29, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963); *Smith v. Goguen, supra* (White, J., concurring in the judgment).
>
> *We are therefore required to consider the facts giving rise to this action.* (Emphasis added.)

Three years later, Justice Shepard repeated this same proposition in *State v. Lopez*, 98 Idaho 581, 588–89, 570 P.2d 259, 266–67 (1977).[3]

Kleiber had no need to establish that Ordinance 9–9–1 is "impermissibly vague in *all* of its applications." *Newman, supra,* 108 Idaho at 12, 696 P.2d at 862. Nevertheless, by inappropriately turning to *Flipside*, the majority avoids deciding the issue

---

**2.** The Act is found at I.C. §§ 37–2701(bb), –2734A, –2734B, and –2774(a)(7).

**3.** As pointed out in my *Lopez* opinion, Justice Shepard, in his first *Lopez* opinion, more accurately restated the holding of *United States v.*

*National Dairy Products Corp., supra:* "The sufficiency of a statute ... must be determined in light of the conduct *with which [a defendant] is charged*," not what he did.

decided below and in turn now presented to us, which is whether the ordinance is unconstitutionally vague *as it was applied* to Kleiber. I would hold that it is. The ordinance's wording is patently unclear in several respects and fails to provide "reasonable opportunity to know what is and is not prohibited conduct...." *Id.*

The confusion Kleiber confronted is further demonstrated where *the same city council which passed Ordinance 9–9–1 also issued a business license to Kleiber—for which he paid a $20.00 fee—to operate a mobile restaurant within the City of Idaho Falls.*

The city's position amounts to this: Under paragraph C of its ordinance, "Exceptions," anything which might otherwise be a structure or an obstruction on a sidewalk, paragraphs A and B, is nonetheless lawful, provided it is so installed or *placed* with the approval of the city. That which is lawful cannot be unlawful. The approval results in it being deemed to conform to acceptable standards. Shortened, the city concedes: if we give our approval, no problem, lawful it is. *But,* on the other hand, should we have a change of mind and withdraw our approval, then your pushcart is no longer deemed to conform to acceptable standards, and, *a fortiori,* you and your pushcart must go to jail for your violation of our law.

*Newman* set out well the reasons underpinning the vagueness doctrine which are applicable here:

> In essence, three values are protected: (1) that of protecting innocent people from being prosecuted by giving them reasonable opportunity to know what is and what is not prohibited conduct; (2) that of avoiding the arbitrary and discriminatory enforcement of the law by providing explicit standards for those charged with enforcing the law; and (3) that of avoiding the delegation of basic policy matters to law enforcement personnel, judges, and juries for resolution on an *ad hoc* basis, with the all-too-real possibility of arbitrary and discriminatory application, by clearly defining the standards under which an individual's innocence or guilt can be determined. *Grayned v. City of Rockford,* 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972). *Id.*

Today's majority does little to protect those values.

The majority sets up a straw-man defense, and skirts around it for an easy touchdown: "The ultimate issue herein is whether Kleiber, by purchasing a business license from the City of Idaho Falls, obtained a vested or fundamental right to conduct a business on the public sidewalks...." P. 1277. Not so. The "ultimate" issue is whether Ordinance 9–9–1 is unconstitutionally vague as applied to Kleiber. Obviously it is.

## II.

The majority is not troubled by the fact that the city on day one licensed Kleiber. On day two it claims Kleiber cannot legally operate under that license. Putting aside the mishandling of the vagueness issue, I disagree with the majority holding that the city cannot be held estopped from enforcing its ordinance in this situation and under the circumstances here attendant.

The majority relies upon *Harrel v. City of Lewiston,* 95 Idaho 243, 247, 506 P.2d 470, 474 (1973) for its anti-estoppel resolution. In *Harrel* the Court was split 3–2. I thought at the time of *Harrel* that the dissent was more persuasive than the majority opinion, and turn to it now:

> I ... disagree with *the novel* assertion by the court that the principle of estoppel should not be applied against a municipality within the State of Idaho. *Since at least 1909 the Supreme Court of Idaho has been committed to a different rule than that laid down by the majority herein.* In that year Mr. Justice Ailshie, speaking for the court on rehearing in *Boise City v. Wilkinson,* 16 Idaho 150, 177, 102 P. 148 (1909) stated:
>
> > "We recognize that as a general rule, the doctrine of estoppel does not apply to municipal corporations, and we are not unmindful of the fact that the

courts of many states have absolutely refused to apply it to such corporations. *We are not prepared, however, to announce an unalterable and unexceptionable rule in this state, which would inevitably result in perpetrating wrong and injustice in exceptional cases like this.* Courts of equity are established for the administration of justice in those peculiar cases where substantial justice cannot be administered under the express rules of law, and to adopt a rigid rule that recognizes no exceptions would be to rob such courts of much of their efficacy and power for administering even-handed justice. *The people in their collective and sovereign capacity ought to observe the same rules and standard of honesty and fair dealing that is expected of a private citizen. In their collective governmental capacity, they should no more be allowed to lull the citizen to repose and confidence in what would otherwise be a false and erroneous position than should the private citizen.*

That same language has been reiterated as recently as 1965 in *Dalton Highway District of Kootenai County v. Sowder,* 88 Idaho 556, 401 P.2d 813 (1965).

It is now desirable, I believe, to turn to the facts of the instant case and state them baldly to determine whether the case at bar presents an exceptional case which would otherwise result in perpetrating wrong and injustice. *Also we must determine whether the city has observed "the same rules and standard of honesty and fair dealing that is expected of a private citizen." In my judgment the city has not so acted in the present case.*

. . . .

*I suggest in this case that the City of Lewiston has acted wrongfully and to the detriment of one of its citizens. I suggest further that this is just the case as Mr. Justice Ailshie had in mind when he argued that to adopt a rigid rule that recognizes no exceptions "would be to rob such courts of much of*

*their efficiency and power for administering even-handed justice." In conclusion, I would note that the only Idaho authority cited in the majority opinion for the non-application of estoppel against a municipality are the cases of Boise City v. Sinsel, 72 Idaho 329, 241 P.2d 173 (1952), and Yellow Cab Taxi Service v. City of Twin Falls, 68 Idaho 145, 190 P.2d 681 (1948). I regret to point out that neither of said cases provides authority for the majority statement. Yellow Cab and Sinsel only* held that no person could acquire title to city streets since such were held in trust for the public. In *Sinsel* and in *Yellow Cab* parties sought to have a warehouse and a cab stand respectively authorized, although both were located in a city street. In *Sinsel* the court pointed out specifically the distinction between the usual estoppel situation and "the exercise by a city of its police power over a street open and in use by the public." *Id.* at 249–51, 506 P.2d at 476–78 (Shepard, J., dissenting, Bakes, J., concurring therein) (emphasis added).

As I was early to learn in this business, three beats two. As I learned at a much earlier age, two plus one equals three. If *Harrel* was wrongly decided, and two justices—who sat in *Harrel* and who still sit today—have emphatically declared that it was, here then, is a strong third vote to overrule it, and reincarnate the Court's holding in the language of Justice Ailshie in the *Wilkinson* case. Bakes and Shepard, JJ., remain to be heard from.

HUNTLEY, Justice, dissenting.

I must respectfully dissent from the majority opinion. A city has broad powers to adopt ordinances which promote the public health, safety and welfare. The Idaho Falls ordinance concerning sidewalk obstruction is a valid application of that power as long as the ordinance is constitutionally applied. However, if Idaho Falls improperly discriminated against appellant in applying the ordinance, the city denied appellant equal protection of the laws in violation of 42 U.S.C. § 1983. *Milnot Co. v. Arkansas State Board of Health,* 388 F.Supp. 901, 905 (1975).

I believe there is a material issue of fact as to whether Idaho Falls improperly discriminated against appellant. It is acknowledged that the city permits other types of vending on its sidewalks such as newspaper vending machines and telephone booths, and nothing in the record establishes that appellant's hot dog stand is any more of an obstruction than the other types of sidewalk vending regularly permitted by the city. In fact, the record shows that the city began issuing citations to appellant because the chief of police received complaints from local restaurant owners who did not appreciate the competition. There was no complaint that traffic was obstructed. These facts are sufficient to raise a material issue of fact as to whether appellant's civil rights were violated under 42 U.S.C. § 1983. Therefore, summary judgment was not appropriate. *Anderson v. Ethington,* 103 Idaho 658, 660, 651 P.2d 923 (1982).

It may be appropriate for Idaho Falls to pass an ordinance prohibiting all sidewalk vending or even prohibiting mobile hot dog stands. However, it is not appropriate for the city to implement such a policy by selectively and improperly applying its ordinances. I would reverse and remand for trial.