671 F.Supp. 641 (1986)
Jesse Woodson JAMISON, Plaintiff,
v.
CITY OF ST. LOUIS, MISSOURI, et al., Defendants.
No. 84-536 C (5).
United States District Court, E.D. Missouri, E.D.
July 17, 1986.
*642 *643 Schwartz, McCoy, Herman & Davidson, Robert Herman, St. Louis, Mo., for plaintiff.
Charles W. Kunderer, Asst. City Counselor, St. Louis, Mo., for defendants.

MEMORANDUM
LIMBAUGH, District Judge.
Plaintiff Jesse Woodson Jamison[1] has brought this civil rights action against defendants Col. Leonard L. Griggs and the City of St. Louis, Missouri. He contends that defendants have violated his First Amendment rights of freedom of speech by denying his request for permission to protest against Trans World Airlines (TWA) at St. Louis Lambert Field International Airport. Col. Griggs is the Director of Lambert Field, and the City of St. Louis owns the facility. Plaintiff seeks an injunction directing defendants to allow him to protest at the airport facility, and a declaration that the method by which Col. Griggs determines who may protest violates the First and Fourteenth Amendments. The defendants have answered plaintiff's complaint with general denials and contend, affirmatively, that Jamison poses a "clear and present danger" to passengers and employees at Lambert Field.
The parties tried this cause to the Court on March 20, 1986. This Memorandum constitutes the Court's findings of fact and conclusions of law for purposes of Fed.R. Civ.P. 52(a).

Findings of Fact
After TWA discharged its former employee, plaintiff Jesse Jamison, from his employment at Lambert Field on June 22, 1984, he applied to Col. Griggs, the airport's Director, for permission to protest against the airline. Jamison's application letter to Griggs reads, in pertinent part,
This is a formal request for written permission to protest my discriminatory discharge from employment with Trans World Airlines. I would like to picket at the foot of concourse C, near the glass wall, to be sure that I do not obstruct any passenger traffic, which I assure you is not my intention. I also do not intend to solicit funds, distribute literature, willfully engage passengers in conversation, or cause any disturbance what-so-ever (sic). I only desire to remain in a stationary position with a poster in my hand, and in doing so exercise my First Amendment right to freedom of speech.
*644 Plaintiff planned to stand near a well-traveled portion of the airport's main terminal and hold a sign that reads "TWA DISCRIMINATES AGAINST THE HANDICAPPED."
On June 29, 1984, Col. Griggs denied Jamison's request, noting in a letter to plaintiff, "Under the circumstances at this airport, I respectfully deny your request." Col. Griggs did not purport to base his refusal on the rules governing solicitation at Lambert Field.[2] The solicitation rules establish a procedure by which a person can apply to protest at the airport, and set limits on where and when these protests can occur. Despite the apparent applicability of the solicitation rules, Col. Griggs testified at trial that he exercises total discretion in deciding whether someone may protest at Lambert Field. He usually denies these requests as a matter of course, without consulting the pertinent portions of the rules.
Col. Griggs testified in a straight forward manner about the reasons for his denial of plaintiff's application to protest. He denied plaintiff's application because he disagreed with the message plaintiff wanted to convey, and because he believed that plaintiff has severe psychological problems. While Jamison was a TWA employee, a federal grand jury indicted him for applying for a passport under a false name, a criminal offense under 18 U.S.C. § 1542.[3] However, the Honorable Clyde S. Cahill, United States District Judge for the Eastern District of Missouri, determined on May 31, 1984, that Jamison "could not appreciate the nature, quality and wrongfulness of the conduct charged in the indictment," and dismissed the criminal charge. Col. Griggs knew that a federal district court had determined that plaintiff had a mental disorder, and based the decision to deny his request at least partially on this information.
Jamison has a long history of psychiatric disorders. He has a manic/depressive personality and suffers from severe mood swings, ranging from deep depression to unrealistic elation. Dr. Jerold Kreisman, a psychiatrist, examined plaintiff on February 21, 1986. He determined that Jamison does not necessarily pose a danger to other people, but confirmed the continuing presence of plaintiff's wide mood swings. Plaintiff believes that Col. Griggs has been harassing him over the phone, a claim that Griggs credibly denied at trial. Plaintiff has access to a firearm, although he claims he never takes the weapon outside his home.

Conclusions of Law
The Court has jurisdiction of this federal civil rights action pursuant to 28 U.S.C. §§ 1331 and 1343(3), and 42 U.S.C. § 1983. Venue is proper in the Eastern District of Missouri. 28 U.S.C. § 1391(b).
The First Amendment provides that "Congress shall make no law ... abridging the freedom of speech." The Free Speech Clause applies to the states and their subdivisions through incorporation in the Due Process Clause of the Fourteenth Amendment. United Mine Workers v. Illinois Bar Ass'n., 389 U.S. 217, 221-22 n. 4, 88 S.Ct. 353, 356 n. 4, 19 L.Ed.2d 426 (1967), citing, New York Times Co. v. Sullivan, 376 U.S. 254, 276-77, 84 S.Ct. 710, 723-24, 11 L.Ed.2d 686 (1964). The area at Lambert Field where Jamison would like to protest is a "public place" which, ordinarily, means it is a "public forum," where citizens may express their views. United States v. Grace, 461 U.S. 171, 176-80, 103 S.Ct. 1702, 1706-08, 75 L.Ed.2d 736 (1983); see also International Society for Krishna Consciousness v. Engelhardt, 425 F.Supp. 176, 180 (W.D. Mo.1977) (public area at airport is a public forum).
Under the principles of Monell v. Dept. of Social Services of the City of New York, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) and its progeny, the City of St. Louis must bear legal responsibility for Col. Griggs' actions. Col. Griggs is a high-ranking city employee and the *645 method by which he considers applications to protest has become city policy. Id. at 694, 98 S.Ct. at 2037.
Col. Griggs alone decides when a person may protest at Lambert Field. When making these decisions, he follows his own judgment, and does not look to any objective criteria. He completely ignores the standards enunciated in the solicitation rules. Consequently, the Court must determine the constitutionality of the actual procedure Col. Griggs uses when considering applications to protest, and not the constitutionality of the solicitation rules as written. See Cox v. Louisiana, 379 U.S. 536, 556-57, 85 S.Ct. 453, 465-66, 13 L.Ed.2d 471 (1965); and Niemotko v. Maryland, 340 U.S. 268, 271-72, 71 S.Ct. 325, 327-28, 95 L.Ed. 280 (1951).
A system in which an official has complete discretion to grant or deny applications to protest in a public forum violates the First and Fourteenth Amendments to the United States Constitution.
[A policy which] makes the peaceful enjoyment of freedoms which the Constitution guarantees contingent upon the uncontrolled will of an official  as by requiring a permit or license which may be granted or withheld in the discretion of such official  is an unconstitutional censorship or prior restraint upon the enjoyment of those freedoms.
Straub v. Baxley, 355 U.S. 313, 322, 78 S.Ct. 277, 282, 2 L.Ed.2d 302 (1957) (bracketed material added); see also Shuttlesworth v. Birmingham, 394 U.S. 147, 150-51, 89 S.Ct. 935, 938-39, 22 L.Ed.2d 162 (1969); Cox, 379 U.S. at 556-58, 85 S.Ct. at 465-66; Kunz v. New York, 340 U.S. 290, 293-94, 71 S.Ct. 312, 314-15, 95 L.Ed. 280 (1951); Niemotko, 340 U.S. at 272, 71 S.Ct. at 327; and Schneider v. State, 308 U.S. 147, 161-62, 60 S.Ct. 146, 150-51, 84 L.Ed. 155 (1939).
The United States District Court for the Western District of Missouri considered a similar situation in International Society for Krishna Consciousness v. Engelhardt. There, Judge Hunter declared unconstitutional a Kansas City, Missouri, ordinance that limited the ability of persons to protest at that city's airport, finding that "it prescribes no standards to limit the unbridled discretion of the licensing authority." 425 F.Supp. at 180. Like the unconstitutional ordinance in Engelhardt, the system by which persons must apply to Col. Griggs for permission to protest allows for no limitation on his discretion and is similarly defective.
In addition, in denying plaintiff Jamison's application to protest, Col. Griggs based his decision, in part, on his belief that, contrary to the message plaintiff wants to convey, TWA does not discriminate against the handicapped. But, the Constitution does not permit the state to deny a request to protest because the licensing agent disagrees with the message a protester seeks to communicate. "The right to equal protection of the laws, in the exercise of those freedoms of speech and religion protected by the First and Fourteenth Amendment, has a firmer foundation than the whims of personal opinions of a local governing body." Niemotko, 340 U.S. at 272, 71 S.Ct. at 328.
The method by which Col. Griggs determines who can protest, then, violates the First and Fourteenth Amendments. But, whether plaintiff has a right to protest at Lambert Field raises additional questions, relating principally to the constitutional sufficiency of defendants' affirmative defense. They contend that plaintiff poses a "clear and present danger" to passengers and employees at Lambert Field and that, consequently, he has no right to protest at the facility.
The phrase "clear and present danger" generally applies to situations where the content of speech endangers the personal safety of persons in the vicinity of the speaker or inhibits a legitimate state goal and, as a result, justifies certain limitations. See e.g. Bond v. Floyd, 385 U.S. 116, 137, 87 S.Ct. 339, 350, 17 L.Ed.2d 235 (1966); Watts v. U.S., 394 U.S. 705, 706-08, 89 S.Ct. 1399, 1400-02, 22 L.Ed.2d 664 (1969) (per curiam); and Brandenburg v. Ohio, 395 U.S. 444, 446, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969) (per curiam). The defendants *646 want to preclude Jamison from protesting at Lambert Field because his presence, rather than the content of his speech, endangers others. They have improperly labeled the defense they assert, since the danger they cite does not concern the content of Jamison's proposed message. Instead, the Court must determine whether the existence of Jamison's serious mental impairment represents a constitutionally sufficient reason for excluding him from the facility.
By denying Jamison's application to protest, defendants seek to regulate conduct, his presence at the airport, and this regulation necessarily has an effect on his ability to express his views in that forum. In Clark v. Community for Creative Non-Violence, 468 U.S. 288, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984), the Supreme Court upheld the constitutionality of National Park Service regulations prohibiting people from camping in Lafayette Park across from the White House. The persons who challenged the regulations sought permission to camp in Lafayette Park in order to protest President Reagan's economic policies. The challenged regulations authorize protesters to erect tent cities in the park, but do not allow them to actually camp there.
The Supreme Court found this limitation permissible either as a reasonable time, place or manner restriction, or as a valid regulation of symbolic conduct. Id. 104 S.Ct. at 3069. The latter ground has no applicability here since Jamison does not wish to express his message merely by appearing at Lambert Field. Consequently, the standards enunciated in United States v. O'Brien, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968), the seminal case in the area of regulation of expressive conduct, have no relevance. In O'Brien, the Court considered the constitutionality of regulations prohibiting the burning of draft cards. The challenged restriction regulated conduct which itself was the intended message. Here, the regulated conduct, presence, is not the message plaintiff wants to convey.
The Court must determine whether defendants' refusal to allow Jamison to protest because of his mental afflictions is a reasonable time, place or manner restriction.
Expression, whether oral or written or symbolized by conduct is subject to reasonable time, place and manner restrictions. We have often noted that restrictions of this kind are valid provided that they are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open amply alternative channels for communication of the information.
Clark, 104 S.Ct. at 3069; City Council v. Taxpayers for Vincent, 466 U.S. 789, 104 S.Ct. 2118, 2130, 80 L.Ed.2d 772 (1984); and Grace, 103 S.Ct. at 1708-10. The exclusion of mentally incompetent persons whose presence might pose a danger to others satisfies the requirement that the restriction be content neutral and intended to further a significant state interest. Airport officials have a legitimate interest, indeed a responsibility, to protect persons at airports from mentally ill people. Further, the exclusion of plaintiff from the airport leaves him other avenues of protest, albeit some not as efficacious as the course of action he proposes.
The effect of the restriction the defendants have imposed on plaintiff necessarily results in his complete exclusion from Lambert Field.[4] This does not render the restriction constitutionally invalid. In City Council v. Taxpayers for Vincent, the Supreme Court affirmed the constitutionality of a Los Angeles ordinance that prevents political candidates from posting campaign signs on public property. The Supreme Court found this total prohibition permissible, stating "the application of the ordinance in this case responds precisely to *647 the substantive problem which legitimately concerns the City. The ordinance curtails no more speech than is necessary to accomplish its purpose." 104 S.Ct. at 2132. Similarly, a prohibition that prevents mentally incompetent persons from protesting at Lambert Field must necessarily be broad and total in order to accomplish its purpose. The Court finds the defendants' reason for denying the plaintiff's request constitutionally valid, and further holds that Jesse Jamison, due to his severe chronic manic/depressive condition, does not have the right to protest at Lambert Field.
In plaintiff's complaint, though, he seeks not only an injunction ordering defendants to allow him to protest, but a declaration that the process by which Col. Griggs decides who can protest at Lambert Field violates the Constitution. The Court has already ruled that Col. Griggs' actions violate the First and Fourteenth Amendments, but that plaintiff, due to his mental affliction, has no right to protest. The issue becomes, then, whether Jamison, a person who does not have the right to protest, can prevail on his application for declaratory relief.
Ordinarily, constitutional standing requirements inherent in the "case" or "controversy" language in U.S. Const. Art. III, § 2, cl. 1, preclude persons from asserting the rights of others. 13 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure: Civil § 3531. If these principles apply here, Jamison cannot prevail on his claim that the actions of Col. Griggs violate the Constitution because he, due to his mental affliction, does not have the right to protest. But, in First Amendment cases the Supreme Court has allowed litigants to raise the rights of others by using the "overbreadth doctrine" to strike down restrictions on speech. Taxpayers for Vincent, 104 S.Ct. at 2124-27; Secretary of State of Maryland v. Joseph H. Munson Co., 467 U.S. 947, 104 S.Ct. 2839, 2847-50, 81 L.Ed.2d 786 (1984); and Broaderick v. Oklahoma, 413 U.S. 601, 611-13, 93 S.Ct. 2908, 2915-16, 37 L.Ed.2d 830 (1973). Consequently, even though a certain action might not infringe on the rights of a plaintiff who, for whatever reason, has no right to express his views in a given forum, a court can still consider whether that action is overbroad, i.e. whether it impermissively burdens the rights of those who do have the right to speak.
The seminal case in this area is Broaderick. There, the Supreme Court, while reaffirming the viability of the overbreadth doctrine, placed limits on its use, noting that the doctrine is "manifestly, strong medicine" and should apply only to substantially overbroad limitations on speech. Id. at 611-13, 93 S.Ct. at 2915-16. In Taxpayers for Vincent, the Court refined the substantially overbroad requirement, stating that "there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the court for it to be facially challenged on overbreadth grounds." 104 S.Ct. at 2126.
The procedure employed by Col. Griggs on behalf of the City of St. Louis violates one of the best-established principles in the First Amendment area. In fact, in Broaderick, the Supreme Court suggests that in situations where, as here, an official impermissibly exercises boundless discretion in deciding whether persons may speak or protest are especially appropriate occasions for use of the doctrine. 413 U.S. at 613, 93 S.Ct. 2916, citing, Shuttlesworth, 394 U.S. at 150-151, 89 S.Ct. at 938-39; and Cox, 379 U.S. at 557-58, 85 S.Ct. at 465-66. The Court finds that the procedure employed by defendants seriously infringes on the First Amendment rights of those who, unlike plaintiff, have the right absent other considerations to protest at Lambert Field. As a result, although the Court will not order defendants to allow plaintiff to protest, it must declare the procedure by which they determine who may protest unconstitutional in violation of the Free Speech Clause of the First and Fourteenth Amendments to the United States Constitution.

ORDER
In accordance with the Memorandum filed today,
*648 IT IS HEREBY ORDERED that judgment is entered on the merits in favor of defendants Leonard L. Griggs and the City of St. Louis, Missouri, and against plaintiff Jesse Woodson Jamison on plaintiff's application for an injunction requiring defendants to allow him to protest at St. Louis Lambert Field International Airport.
IT IS FURTHER ORDERED that judgment is entered on the merits in favor of plaintiff Jesse Woodson Jamison and against defendants Leonard L. Griggs and the City of St. Louis on plaintiff's application for a declaratory judgment.
IT IS FURTHER ORDERED AND DECLARED that the process by which defendants determine who may protest at St. Louis Lambert Field International Airport is unconstitutional in violation of the Free Speech Clause of the First and Fourteenth Amendments to the United States Constitution.
IT IS FURTHER ORDERED that defendants are permanently enjoined from determining whether persons may protest at Lambert Field through a process in which one person has sole, unlimited discretion to grant or deny applications.

APPENDIX
This rule establishes procedures for the exercise of constitutional freedoms and the solicitation of funds at Lambert-St. Louis International Airport, owned and operated by the City of St. Louis.

Rule # 01.05
SECTION 1 Any person or organization desiring to engage in activities at Lambert-St. Louis International Airport which involves the exercise of constitutional freedoms, including but not limited to distribution of non-commercial, non-obscene, non-subversive literature, shall be protected in such activities, provided that the same do not constitute commercial activities and do not result in interference with transportation functions of the airport.
SECTION 2 The regulations hereinafter set out are hereby declared to be necessary for the accomplishment of the following purposes:
a. To insure that persons seeking to exercise constitutional freedoms of expression can communicate effectively with users of the airport;
b. To insure adequate nearby police facilities for the protection of persons exercising their constitutional freedoms;
c. To restrict such activities to public area of the Airport premises;
d. To protect persons using the Airport from repeated communications or encounters which might constitute harassment or intimidation; and
e. To insure the free and orderly flow of pedestrian traffic through the Airport premises.
SECTION 3
a. No person shall solicit alms or contributions of money or of other articles of value, for religious, charitable or any other purpose, or conduct or participate in any speech-making, distributing of pamphlets, books or other written or graphic materials upon the airport or within its facilities without having delivered a written notice to the Director, or his, her or its intent to do so at least seven (7) days prior thereto so that the precautions to protect the public health, safety and order, and to assure the efficient and orderly use of Airport property for its primary purpose and function, and to assure equal opportunity for the freedom of expression of others.
b. Persons having given such written notice shall be permitted to conduct their activities in or upon the public Airport areas subject to the following restrictions:
1. Solicitors shall be limited to no more than four (4) persons at any one time;
2. Solicitation shall be limited to the hours between 9:00 a.m. and 5:00 p.m.;
3. Solicitations shall be conducted only from "Solicitation Booths" which shall be furnished by the Airport Authority; such booths shall be located within the permissible areas at such *649 points as may be designated from time to time by the Director; and
4. No person, while engaging in the activities provided for herein, shall affix any matter, written or graphic, to any Airport structure or facility, except such as may be necessary to identify the organization which is conducting a solicitation, such signs hereinafter described as to size, content and color.
c. These restrictions are necessary to avoid injury, or the likelihood of injury, to persons or property, or to assure the safe and orderly use of the airport facilities by the public, and such restrictions shall be applied equally and without discrimination as to all persons who have given such written notice. A copy of such restrictions and any explanatory diagrammatic attachments shall be furnished those persons affected.
SECTION 4 In the event that two or more organizations seek to conduct the solicitations described herein at the same time, the Director shall apportion the available areas between or among them an (sic) as equitable a basis as possible.
In no event, however, shall more than two persons be engaged in any activities and solicitations in any one area at the same time. When the Director receives more applications for permits than he is able to grant by following this rule, then he may impose such reasonable and equitable restrictions as to allowable dates or hours or numbers of participants as may reasonably be required to provide fair and as equal as possible opportunities for all applicants, while insuring the efficient and effective operation of the transportation function of the Airport.
SECTION 5 In the solicitation of funds, no sound or voice amplifying apparatus shall be used; and no signs or printed matter shall be attached to the "Solicitation Booths", except as required by this rule to identify the organization which is conducting a solicitation. All groups or organizations receiving permission to solicit shall be required to furnish a sign to identify the organization. The sign shall be as follows:
a. Eight (8) inches high, thirty (30) inches wide;
b. Made of either wood or poster material, neither being over ¼ inch in thickness; and
c. The background of said sign shall be white with letters no larger than six (6) inches in height, said letters being black in color.
SECTION 6 The Director is empowered to wholly or partially restrict the activities provided for herein in the event of emergencies, including but not limited to, strikes affecting the operation of the airport, aircraft or traffic accidents, riots or civil commotion, power failures, or other conditions tending to disrupt the normal operations of the Airport.
SECTION 7 Any violation of a provision of this rule shall constitute a violation and subjects the group or organization to the following:
a. The violator shall be warned that he or she has violated a provision of this rule and what portion was violated;
b. A warning that upon violation of any further provision of this rule, the group or organization shall be asked to leave the premises; and
c. Failure to leave shall subject them to arrest as a Trespasser.
NOTES
[1] Plaintiff originally filed suit under the name Jesse Wurm. He changed his name to Jesse Woodson Jamison by order of the Circuit Court for the City of St. Louis, Missouri, dated August 7, 1985. The Court allowed plaintiff, at trial, to amend his complaint by interlineation to reflect this change.
[2] See appendix.
[3] No. 84-76 (CR) (E.D.Mo. April 19, 1984).
[4] The Court presumes that defendants will not allow plaintiff to enter the terminal for any reason, and plaintiff does not contend that he wants access to the terminal for purposes other than to protest. Consequently, the Court does not consider whether plaintiff has a constitutional right to use the Lambert Field facility for other purposes.