Jesse Woodson **JAMISON**, Appellant,

v.

**CITY OF ST. LOUIS; Leonard L. Griggs, Jr.,** Appellees.

Jesse Woodson **JAMISON**, Appellee,

v.

**CITY OF ST. LOUIS and Leonard L. Griggs, Jr.,** Appellants.

Nos. 86–2007, 86–2249.

United States Court of Appeals, Eighth Circuit.

Submitted April 17, 1987.

Decided Sept. 10, 1987.

---

Robert Herman, St. Louis, Mo., for appellants.

James J. Wilson, St. Louis, Mo., for appellees.

Before LAY, Chief Judge, WOLLMAN, Circuit Judge, and BOGUE,* Senior District Judge.

---

* The HONORABLE ANDREW W. BOGUE, Senior United States District Judge for the District of South Dakota, sitting by designation.

1. The Honorable Stephen Limbaugh, United States District Judge for the Eastern District of Missouri.

2. The full text of this letter reads as follows:
Dear Colonel Griggs,
This is a formal request for written permission to protest my discriminatory discharge from employment with Trans World Airlines.

LAY, Chief Judge.

These cross-appeals arise out of an action brought by Jesse Woodson Jamison against the City of St. Louis (City) and the director of the City's airport. Jamison claimed that his first amendment rights were violated when the airport director refused Jamison's request to protest silently in an unsecured area of the airport. The district court[1], 671 F.Supp. 641, held that the process by which the defendants determine who may protest at the airport is unconstitutional, in violation of the first and fourteenth amendments. The court nevertheless upheld the alleged right of the defendants to bar Jamison from protesting silently at the airport. The court awarded Jamison half of the attorney's fees he requested. We affirm the order declaring the defendants' practices unconstitutional and reverse the ruling that exclusion of the plaintiff was constitutional; we hold that plaintiff is the prevailing party and is entitled to full attorney's fees.

**Background**

Jamison was employed by Trans World Airlines (TWA) for sixteen years, until he was fired on April 16, 1984. Jamison, who suffers from depression, believes that his discharge was discriminatorily based on his mental illness. After he was fired, Jamison informed Colonel Leonard L. Griggs, Jr., director of the city-owned Lambert-St. Louis International Airport, that he wished to protest TWA's action by standing in an unsecured spot on an airport concourse with a sign reading "TWA discriminates against the handicapped." Griggs orally indicated that he would deny Jamison's request. Jamison then submitted a written request to the same effect, emphasizing the intended peaceful nature of the protest.[2] Griggs denied the request in writing without stating his reasons for doing so.[3]

> I would like to picket at the foot of concourse C, near the glass wall, to be sure that I do not obstruct any passenger traffic, which I assure you is not my intention. I also do not intend to solicit funds, distribute literature, willfully engage passengers in conversation, or cause any disturbance what-so-ever. I only desire to remain in a stationary position with a poster in my hand, and in doing so exercise my First Amendment right to freedom of speech.

---

3. See note 3 on page 1282.

At the time of Jamison's request, the Airport Authority had a rule that established "procedures for the exercise of constitutional freedoms and the solicitation of funds" at the airport. Rule 1.05 stated that persons or organizations desiring to exercise constitutional freedoms *shall be protected in such activities,* provided that the same do not constitute commercial activities and do not result in interference with transportation functions of the Airport." (Our emphasis). The second section of the same rule stated that the rule and its accompanying regulations were intended "[t]o insure that persons seeking to exercise constitutional freedoms of expression can communicate effectively with users of the Airport."

The rule further provided that

No person shall solicit alms or contributions of money or of other articles of value, for religious, charitable or any other purpose, or conduct or participate in any speech-making, distributing of pamphlets, books or other written or graphic materials upon the airport or within its facilities without having delivered a written notice to the Director, or [sic] his, her or its intent to do so at least seven (7) days prior thereto so that the precautions to protect the public health, safety and order, and to assure the efficient and orderly use of Airport property for its primary purpose and function, and to assure equal opportunity for the freedom of expression of others.

Finally, the rule stated that

Your prompt written reply to this request would be appreciated.
Very truly yours,
/s/ Jesse Wurm

3. Griggs testified that he performed a brief investigation into Jamison's background before denying the request. According to Griggs, the following was his "reason and basis" for his decision.

The information that I gleaned from talking to TWA security people, from various other people involved in the TWA investigation, whose name I do not remember. I'm talking to the TWA station manager and the evidence presented to me that here we had a former TWA employee who had a known mental dis-

The Director is empowered to wholly or partially restrict the activities provided for herein in the event of emergencies, including but not limited to, strikes affecting the operation of the Airport, aircraft or traffic accidents, riots or civil commotion, power failures, or other conditions tending to disrupt the normal operations of the Airport.

The defendants assert that Solicitation Rule 1.05, although it had not been repealed, was "moribund" at the time of Jamison's request. Griggs testified that he did not apply the rule in denying Jamison's request. Instead, Griggs testified that as director of the airport he had general discretion to disallow any activities that in his opinion would not be in the best interests of the airport or persons using it. Griggs's unvarying practice was to deny *all* requests for permission to protest or solicit except those accompanied by a court order.

The district court held that this procedure violates the first amendment because it gives Griggs unlimited and standardless discretion to determine who may protest or solicit at the airport. The court nevertheless found that Griggs's refusal to allow Jamison to protest silently was a legitimate time, place, and manner restriction, reasonably designed to protect the public from a "mentally incompetent" person.

**Discussion**

**I. Constitutionality of Airport's Practice**

Although the government does have the "power to preserve the property under its control for the use to which it is lawfully dedicated," *Greer v. Spock,* 424

order, and I use the word because I don't know the lay word to use—the depression and that. You all have stated in the record the name of it. Based upon the fact that I had talked to Mr. [Jamison] in my office on several occasions and told him that—you know—based upon these sorts of things, I did not desire to hurt Mr. [Jamison], but I felt I had to protect the travelling public. Here I have before me a gentleman. He has filed a passport for the United States of America under a false name, who went before a Federal Court and was ordered to have a psychiatric evaluation. All these things were told to me, so based upon this, I felt the public could be placed in jeopardy.

U.S. 828, 836, 96 S.Ct. 1211, 1217, 47 L.Ed.2d 505 (1976) (quoting *Adderley v. Florida*, 385 U.S. 39, 47, 87 S.Ct. 242, 247, 17 L.Ed.2d 149 (1966)), the extent to which the government may limit public access to its property depends on whether the property is a public or nonpublic forum. *Cornelius v. NAACP Legal Defense and Educational Fund, Inc.*, 473 U.S. 788, 797, 105 S.Ct. 3439, 3446, 87 L.Ed.2d 567 (1985); *Perry Education Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 44, 103 S.Ct. 948, 954, 74 L.Ed.2d 794 (1983). The district court found that the area of the airport at which Jamison wished to protest is a " 'public place' which, ordinarily, means it is a 'public forum,' where citizens may express their views." *Jamison v. City of St. Louis*, 671 F.Supp. 641 (E.D.Mo.1986). We agree that in these circumstances the public areas of a municipal airport constitute a public forum.

We base our decision on several factors. First, and most importantly, the City of St. Louis, through its solicitation rule, effectively recognized the public forum status of the unrestricted areas of its airport. Its regulations, designed to "insure that persons seeking to exercise constitutional freedoms of expression can communicate effectively with users of the airport," stated that such persons *"shall be protected"* in their activities. (Our emphasis). The City's regulations thus implicitly acknowledged that the first amendment activities that take place in more traditional public forums are not incompatible with the purposes of an airport's public concourses. *Cf. Grayned v. City of Rockford*, 408 U.S. 104, 116, 92 S.Ct. 2294, 2303, 33 L.Ed.2d 222 (1972) ("crucial question is whether the manner of expression is basically incompatible with the normal activity of a particular place * * * ").

Second, every court that has decided the issue has held that an airport is a public forum. *See Jews for Jesus, Inc. v. Board of Airport Comm'rs*, 785 F.2d 791, 795 (9th Cir.1986), *aff'd on other grounds,* —— U.S. ——, 107 S.Ct. 2568, 96 L.Ed.2d 500 (1987); *U.S. Southwest Africa/Namibia Trade & Cultural Council v. United States*, 708 F.2d 760, 764–66 (D.C.Cir.1983); *Fernandes v. Limmer*, 663 F.2d 619, 626–27 (5th Cir.1981); *Chicago Area Military Project v. City of Chicago*, 508 F.2d 921, 926 (7th Cir.), *cert. denied*, 421 U.S. 992, 95 S.Ct. 1999, 44 L.Ed.2d 483 (1975); *Kuszynski v. City of Oakland*, 479 F.2d 1130, 1131 (9th Cir.1973); *International Society for Krishna Consciousness v. Wolke*, 453 F.Supp. 869, 872 (E.D.Wisc.1978); *International Society for Krishna Counsciousness v. Griffin*, 437 F.Supp. 666, 672–73 (W.D.Pa.1977); *International Society for Krishna Counsciousness v. Rochford*, 425 F.Supp. 734, 742 (N.D.Ill.1977), *aff'd in part, rev'd in part*, 585 F.2d 263 (7th Cir. 1978); *International Society for Krishna Counsciousness v. Engelhardt*, 425 F.Supp. 176, 180 (W.D.Mo.1977); *cf. Wolin v. Port of New York Authority*, 392 F.2d 83, 90 (2d Cir.) (large bus station is public forum), *cert. denied*, 393 U.S. 940, 89 S.Ct. 290, 21 L.Ed.2d 275 (1968).[4] We agree with these courts and with the City's implicit acknowledgment that the concourse of a large airport facility like the one in St. Louis has the character, pattern of activity, and nature of purpose that make it an appropriate place for the communication of views. *See Wolin*, 392 F.2d at 89. As has been noted, an airport terminal is much like a busy city street. Both are lined by shops, restaurants, newsstands, and other businesses, with travelers or other members of the general public coming and going as they please. No security checkpoint must be crossed to reach the area where Jamison proposed to stand, nor must a fee be paid to enter that area. These facts, coupled with the City's Rule 1.5, publicly designating the airport as an arena where

---

4. The Supreme Court recently bypassed the question of whether a municipal airport is a public forum. *See Board of Airport Comm'rs v. Jews for Jesus, Inc.*, —— U.S. ——, 107 S.Ct. 2568, 2571, 96 L.Ed.2d 500 (1987) (finding Los Angeles International Airport policy banning all first amendment activity in portion of terminal unconstitutionally overbroad whether forum was public or nonpublic). The *Jews for Jesus* Court found it unnecessary to decide the question because the Airport Commissioner's resolution at issue prohibited *all* first amendment activities and thus was unconstitutionally overbroad regardless of the proper standard. *Id.* at 2573.

first amendment rights would be protected, lead us to conclude that the concourses of Lambert Airport are a public forum.

■ As the Supreme Court has repeatedly stated, "speakers can be excluded from a public forum only when the exclusion is necessary to serve a compelling state interest and the exclusion is narrowly drawn to achieve that interest." *Cornelius v. NAACP Legal Defense and Educational Fund, Inc.*, 473 U.S. 788, 800, 105 S.Ct. 3439, 3448, 87 L.Ed.2d 567 (1985). The defendants' procedure for determining who may exercise first amendment rights at the airport is, therefore, constitutionally defective in two respects.

First, in practice and in contravention of its own regulations, the City gives airport director Griggs complete and unguided discretion to rule on applications to exercise first amendment rights. As the district court noted, such a practice, which

> makes the peaceful enjoyment of freedoms which the Constitution guarantees contingent upon the uncontrolled will of an official—as by requiring a permit or license which may be granted or withheld in the discretion of such official—is an unconstitutional censorship or prior restraint upon the enjoyment of those freedoms.

*Staub v. City of Baxley*, 355 U.S. 313, 322, 78 S.Ct. 277, 282, 2 L.Ed.2d 302 (1958); *cf. Board of Airport Comm'rs v. Jews for Jesus, Inc.*, — U.S. ——, 107 S.Ct. 2568, 2573, 96 L.Ed.2d 500 (1987) (rejecting proposed narrowing construction of ordinance that prohibited all first amendment activities in airport because proposed construction—prohibiting only non-airport related speech—would give airport officials the unconstitutional power "to decide in the first instance whether a given act is airport related.") The Supreme Court has consist-

ently invalidated such practices, in recognition of the immeasurable injury inflicted on first amendment freedoms by the potentially arbitrary and discriminatory exercise of an official's unfettered discretion.[5]

Moreover, the City's practice is not narrowly tailored to serve compelling interests because, as Griggs testified, he routinely refused *all* requests to protest or solicit except those accompanied by court order. Appellees have failed to justify this practice, and we can discern no compelling government need that would warrant such a drastic exclusion of speakers from a public forum. We therefore affirm the district court's finding that the procedure by which the City and Griggs determine who may exercise first amendment rights at the Lambert Airport is unconstitutional, in violation of the first and fourteenth amendments.

## II. Denial of Jamison's Request to Protest Silently

Although the district court declared the defendants' protest policy unconstitutional, it nevertheless upheld the denial of Jamison's request as a reasonable time, place, and manner restriction.

■ The government may regulate the time, place, and manner of expression in public forums as long as its regulations are content-neutral, narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication. *Perry Education Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45, 103 S.Ct. 948, 954, 74 L.Ed.2d 794 (1983). The district court held that the defendants' refusal to allow Jamison to protest because of his "mental afflictions" satisfied these criteria:

> The exclusion of mentally incompetent persons whose presence might pose a

---

5. *See, e.g., Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 150–53, 89 S.Ct. 935, 938–40, 22 L.Ed.2d 162 (1969) (reversing conviction based on ordinance that gave City Commission unbridled authority to issue or withhold parade permits without reference to legitimate regulation of streets or sidewalks); *Saia v. New York*, 334 U.S. 558, 559–60, 68 S.Ct. 1148, 1149, 92 L.Ed. 1574 (1948) (ordinance that prohibited loud- speaker use in public places without permission of police chief with unlimited discretion held unconstitutional); *Cantwell v. Connecticut*, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940) (reversing conviction based on ordinance that required license to distribute religious literature, with no standards for the exercise of licensing discretion).

danger to others satisfies the requirement that the restriction be content neutral and intended to further a significant state interest. Airport officials have a legitimate interest, indeed a responsibility, to protect persons at airports from mentally ill people. Further, the exclusion of plaintiff from the airport leaves him other avenues of protest, albeit some not as efficacious as the course of action he proposes.

*Jamison v. City of St. Louis*, 671 F.Supp. 641, 646 (E.D.Mo.1986).

■ We disagree with the district court's reasoning and conclusion. It is true, as the City urges, that the airport authorities have legitimate interests in "security and operational efficiency." It is also true that Jamison has been diagnosed as manic-depressive. The City has utterly failed to demonstrate, however, how excluding all persons suffering from some form of mental illness will further the City's interests in security and operational efficiency.

The City argues that certain persons, including Jamison, have mental illnesses "which increase their propensity for violent or disruptive conduct," and that barring these persons will further their goals of security and operational efficiency. Yet a broad assertion that *some* manic-depressive persons may be prone to violence cannot justify depriving *all* mentally ill persons of their first amendment rights.[6] Nor did the evidence demonstrate that Jamison would in fact pose a danger to the public.[7]

We find the Supreme Court's language from *Tinker v. Des Moines Indep. Community School Dist.*, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969), applicable here: "[U]ndifferentiated fear or apprehension of

disturbance is not enough to overcome the right to freedom of expression." *Id.* at 508, 89 S.Ct. at 737; *see also Fernandes v. Limmer*, 663 F.2d 619, 628 (5th Cir.1981) ("Punishment for criminal behavior must be government's response to an abuse of the privilege to use a public forum; prospective restraints are unconstitutional.").

Although we thus reject the lower court's ruling on the constitutionality of the defendants' exclusion of Jamison, we agree that it is unnecessary for the court to issue an injunction directing the City to allow Jamison to protest silently. Rather, on remand the district court should fashion an appropriate order declaring the parties' rights, in accordance with this opinion. Upon further violation of plaintiff's rights, if such were to occur, plaintiff is free to renew his request for an injunction to allow him the right of peaceful picketing.

## III. Attorneys' Fees

Jamison has succeeded both on his claim that the defendants' procedure is unconstitutional and on his claim that the defendants' exclusion of him from the airport is unconstitutional. Jamison should reapply for an award for full attorney's fees.

## IV. Conclusion

We affirm the district court's ruling that the defendants' procedure is unconstitutional. We reverse the ruling with respect to the defendants' exclusion of Jamison and remand for entry of an order declaring the parties' rights, in accordance with this opinion. Plaintiff shall recover costs from the City.

---

6. The district court apparently endorsed a complete "prohibition [to] preven[t] mentally incompetent persons from protesting at Lambert Field." At 646. We reject such an overbroad and constitutionally offensive prohibition. We note, however, that we are not faced with and therefore need not address the constitutionality of an ordinance or regulation that is narrowly tailored to protect the public from those people who actually present substantial threats to safety.

7. Dr. Jerold J. Kreisman, appointed by the court to conduct a psychiatric evaluation of Jamison, concluded that

    although by virtue of his illness there is a potential in some circumstances, for violence, at this time and under usual circumstances I do not believe that Mr. [Jamison] poses an imminent danger to himself or to other people, nor would such circumstances likely arise during controlled and orderly peaceful protest.