**Harlan L. JACOBSEN, d/b/a Solo RFD and Single Scene, Appellant,**

v.

**Pete CRIVARO, Mayor of City of Des Moines, Iowa, City of Des Moines, Iowa, Appellees.**

**No. 87–1004.**

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 14, 1987.

Decided July 13, 1988.

Rehearing and Rehearing En Banc Denied Aug. 23, 1988.

Robert A. Hirschfeld, Phoenix, Ariz., for appellant.

James E. Nervig, Des Moines, Iowa, for appellees.

Before LAY, Chief Judge, HEANEY and MAGILL, Circuit Judges.

MAGILL, Circuit Judge.

## I. INTRODUCTION

Harlan L. Jacobsen (Jacobsen), a newspaper publisher, appeals the district court's [1] refusal to enjoin enforcement of local ordinances regulating the size and placement of newspaper vending machines (newsracks), and providing for a $10.00 annual licensing fee per newsrack, which Jacobsen claims violates his First Amendment rights. He also appeals the district court's entry of summary judgment in favor of the Mayor and the City of Des Moines, Iowa (collectively, Des Moines or City), holding that the ordinance regulating the placement of newsracks was a constitutional time, place and manner restriction, and that the ordinance assessing annual fees was constitutional because the fees do not exceed the administrative costs of the licenses.

## II. BACKGROUND

Jacobsen publishes newspapers in a number of cities in the Midwest under the trade names *SOLO RFD* and *SINGLE SCENE.* These newspapers are primarily distributed in newsracks. Des Moines has passed ordinances regulating the placement of newsracks on public property. Under the ordinances, any party wishing to locate a newsrack on city property is required to file an application for a license with the City Director of Traffic and Transportation (Director). Des Moines Municipal Code §§ 22–32, 22–33 (DMMC). The applicant is also required to pay an annual license fee of $10.00 per newsrack. DMMC § 23–44. In addition to these requirements, the applicant must also comply with restrictions relating to the size and location of the newsrack.[2] Once a licensing application

---

1. The Honorable William C. Stuart, Senior United States District Judge for the Southern District of Iowa.

2. The pertinent regulations are as follows:
   23–24. GENERAL REGULATIONS.

   (a) No license or lease required under this subchapter shall be granted for any encroachment until the required fee has been paid, and until an application with complete plans shall have been filed with and approved by the director.

has been filed and the fee paid, the ordinance requires the Director to grant the license if the placement of the newsrack conforms to the size and location restrictions. DMMC § 23–36. The Director has no discretion to deny the license on the basis of a publication's content, or on the basis of any criteria other than those listed in the ordinances.

In the event a newsrack is placed on city property without a proper license having been secured, the Director is required to give written notice to the owner of the newsrack advising that the newsrack will be removed by the City after ten days, unless the newsrack is brought into compliance with the ordinance and is licensed or the owner requests a hearing before the City Council. DMMC § 23–41. If there is no such request, the Director is authorized to remove the newsrack after the expiration of the ten-day period.[3] *Id.*

Jacobsen placed newsracks on property belonging to the City, without having applied for the license or having paid the license fee required by the City's ordinances.

On December 18, 1985, the City sent Jacobsen a letter advising him that his

(b) No license or lease shall be granted or renewed for any encroachment when it would unreasonably obstruct the rights of travel which the general public has on any public property or would unreasonably interfere with or impede the flow of pedestrian or vehicular traffic.

(c) No license or lease shall be granted or renewed for any encroachment that would be placed or erected upon a sidewalk so as to occupy more than 25 percent of the width of the sidewalk.

(d) No license or lease shall be granted or renewed for any encroachment that would be placed or erected at a street corner within the vision clearance triangle described in section 27–14 of this code.

(e) No license or lease shall be granted or renewed for any sign which extends over the surface of any public property in cases where the city has contracted with another public body to prohibit the encroachment of signs over the surface of such public property.

23–25. SPECIAL REGULATIONS REGARDING NEWSRACKS AND TRASH CONTAINERS.

(a) In addition to the general regulations set forth in this subchapter, newsracks and trash containers on public property are subject to the regulations of this section; provided, however, that newsracks within the skywalk system are subject to the regulations of section 23–35.01 of this code and are exempt from the provisions of this section.

(b) No newsrack shall be located:

(1) Within five feet of any fire hydrant, fire or police alarm box, or other emergency facility;

(2) Within two feet of any marked crosswalk or any driveway;

(3) Where it restricts access to a bus shelter or a bus bench;

(4) Where it interferes with loading or unloading at the front and rear doors of buses;

(5) On any handicap access ramp;

(6) In such a manner as to reduce the clear space for the passageway of pedestrians on sidewalks to a continuous and unobstructed width of less than six feet;

(7) On the right-of-way of any street where parking is prohibited on both sides for all or any portion of the day or within 50 feet of such street on the right-of-way of any intersecting street, except that this provision shall not apply to "C–3" Central Business District Commercial District zoned areas.

(c) Newsracks on public street right-of-way shall only be placed either (a) not more than one foot back from the face of the curb, or (b) not more than six inches from a public utility pole or a traffic sign pole located near the curb, or (c) parallel to the wall of a building and not more than six inches from the wall. Newsracks placed near the curb shall be placed so that the opening through which newspapers or news periodicals are dispensed does not face the curb line.

(d) No newsrack shall exceed five feet in height or two feet in depth. The maximum width of a newsrack shall be computed by multiplying by two and one-half feet the number of laterally-installed vending compartments, which number shall not include vending compartments installed on top of other such compartments.

(e) A licensed newsrack may be moved to a new site without the requirement of a new application and fee, provided that a site plan showing the exact new location is filed with the director no later than the next business day of the city after the move, and provided that the placement of the newsrack at the new site is in compliance with the requirements of this subchapter and any other applicable legal requirements.

3. Ordinance section 23–41(c) provides an exception to the ten-day notice requirement in emergency cases where the Director determines that a newsrack has been placed on public property so as to unreasonably interfere with or impede the flow of vehicular or pedestrian traffic. In these cases, the city may immediately remove the newsrack, subject to a later hearing before the City Council.

newsracks were in violation of the City's ordinances and were subject to removal. The letter further advised Jacobsen of his right to a hearing before the City Council.

On January 17, 1986, Jacobsen filed a complaint and motion for preliminary injunction against the Mayor and the City, alleging that the City's newsrack ordinances were unconstitutional, both facially and as applied to him. The defendants resisted the motion for preliminary injunction and filed a motion for summary judgment. The City agreed not to remove Jacobsen's newsracks unless and until a judgment adverse to Jacobsen was rendered by the district court.

Notwithstanding the City's agreement not to remove any of Jacobsen's newsracks during the pendency of this lawsuit, on October 9, 1986, after receiving several complaints concerning safety hazards caused by the placement of Jacobsen's newsracks at two specific locations, the City notified Jacobsen that those newsracks were in violation of DMMC § 23–35(b)(7), which states that "[n]o newsracks shall be located [o]n the right-of-way of any street where parking is prohibited on both sides for all or any portion of the day or within 50 feet of such street on the right-of-way of any intersecting street, except that this provision shall not apply to 'C–3' Central Business District Commercial District zoned areas." Because of the danger caused by the placement of the newsracks at these two locations, the City ordered Jacobsen to remove them by October 27, 1986. The City stated that if Jacobsen failed to comply with the removal order, the newsracks would be removed by the City. The City informed Jacobsen that he would have an opportunity for a hearing before the City Council, prior to removal of the newsracks. Jacobsen declined the opportunity for a hearing and failed to remove the newsracks. Accordingly, on November 3, 1986, the City removed three newsracks from the two locations designated in the removal order.[4] The City advised Jacobsen of the removal action and the procedures for return of the newsracks.

On November 10, 1986, the City advised Jacobsen by letter that a public hearing on the subject of the removal of the three newsracks had been scheduled before the City Council at 5:30 p.m. on Monday, December 1, 1986. Jacobsen did not appear at this hearing.

After a hearing was held in the district court on Jacobsen's motion for a preliminary injunction and defendants' motion for summary judgment, the district court denied Jacobsen's motion for a preliminary injunction and granted the City's motion for summary judgment. This appeal followed.

## III. DISCUSSION

■ The Supreme Court, in *City of Lakewood v. Plain Dealer Publishing Co.,* — U.S. ——, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988), recently considered the propriety of city ordinances which restrict the placement of newsracks. The Court held unconstitutional an ordinance of the City of Lakewood, Ohio, which vested the Mayor of Lakewood with unbridled discretion over which publishers could place newsracks on public property. *Lakewood,* — U.S. at ——, 108 S.Ct. at 2150–2152. The Court made clear, however, that a city may enact licensing procedures for conduct commonly associated with expression, so long as the city "establish[es] neutral criteria to insure that the licensing decision is not based on the content or viewpoint of the speech being considered." *Lakewood,* — U.S. at ——, 108 S.Ct. at 2145. We have carefully reviewed the ordinances challenged by Jacobsen, and we hold that they represent constitutional, non-discretionary, and content-neutral time, place or manner restrictions, which are narrowly tailored to serve significant public safety interests of the City. *See Perry Education Association v. Perry Local Educators' Association,* 460 U.S. 37, 45, 103 S.Ct. 948, 954, 74 L.Ed.2d 794 (1983).

■ Jacobsen next argues that material issues of fact as to the specific application of the ordinances to his newsracks preclud-

---

4. These three newsracks are the only ones be- longing to Jacobsen that have been seized.

ed the entry of summary judgment. "[T]he plain language of [Fed.R.Civ.P.] 56(c) mandates the entry of summary judgment * * * against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Once the City informed the district court that there were no issues of material fact which precluded the entry of summary judgment, it became Jacobsen's "burden to set forth affirmative evidence, specific facts, showing that there [was] a genuine dispute." *City of Mt. Pleasant, Iowa v. Associated Electric Co–Op, Inc.*, 838 F.2d 268, 274 (8th Cir.1988). This he failed to do. Jacobsen presented no evidence that he was the victim of discriminatory content-based enforcement of the ordinances by the City, or that there was a demonstrated bias on the part of local officials against his newspapers. On the contrary, the record indicates that the City gave Jacobsen every opportunity to comply with the regulations and receive a license, and that the City was merely enforcing its regulations in a neutral manner in an effort to protect the public safety.

Jacobsen also challenges the constitutionality of the $10.00 annual licensing fee required by the City. He argues that the license fee is *per se* unconstitutional, and alternatively, that even if a fee is constitutional, the entry of summary judgment holding the fee permissible was improper because there was a material question of fact as to whether the fee was revenue-raising or merely covered administrative costs.

 We disagree that the fees are *per se* unconstitutional. While it is true that ordinarily a governmental entity cannot profit by imposing a licensing fee on a First Amendment right, *Murdock v. Pennsylvania*, 319 U.S. 105, 113–14, 63 S.Ct. 870, 875, 87 L.Ed. 1292 (1943), fees that cover only the administrative costs of the license are permissible. *Eastern Connecticut Citi-*

*zens Action Group v. Powers*, 723 F.2d 1050, 1056 (2d Cir.1983).

Moreover, we find Jacobsen's claim that summary judgment was premature to be without merit. Jacobsen never contended in the district court that there was any evidence tending to show that there was a factual question as to whether the fee exceeded the City's administrative costs. Therefore, we agree with the district court's grant of summary judgment and its holding that "the fees charged by the [C]ity are permissible to cover the administrative costs of the licenses." District court op. at 6; *see Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552.

Accordingly, the judgment of the district court is affirmed in all respects.