United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No.  92-3182

_____

| | | |
|---|---|---|
| Harlan L. Jacobsen, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of South Dakota. |
| City of Rapid City, South Dakota; | * | |
| William Bacon, Airport Administrator, | * | |
| | * | |
| Defendants - Appellants. | * | |

_____

Submitted: June 12, 1996
Filed: October 22, 1997

_____

Before LOKEN, JOHN R. GIBSON, and HANSEN, Circuit Judges.

_____

LOKEN, Circuit Judge.

The City of Rapid City, South Dakota, and Airport Administrator William Bacon (collectively, "the City") appeal a district court order permanently enjoining them from banning Harlan L. Jacobsen's newspaper vending machines, or newsracks, from the Rapid City Regional Airport terminal.  The City argues that its policy regarding newsracks is reasonable and therefore does not violate Jacobsen's First Amendment rights.  Although we find most of the City's reasons for banning newsracks

unpersuasive, we conclude that the record does not support an injunction against the revenue-raising aspect of its policy. Therefore, we reverse.

The Airport opened a new terminal in 1988. The upper level has a secure concourse area for boarding and exiting airplanes, and a preconcourse area that includes a gift shop, restaurant, lounge, public rest areas, and public telephones. The lower level contains customer service areas for airlines, limousines, and rental cars, and the baggage claim area.

The Airport generates revenues through landing fees, parking lot fees, rental car company revenues, and rents and charges to other terminal tenants. One who wishes to use terminal space for commercial activity must be approved by the City's Regional Airport Board and enter into a written lease. See S.D. CODIFIED LAWS § 50-7-3.

Jacobsen publishes Solo RFD, a monthly newspaper providing services and advice to single people. He prefers to distribute Solo RFD through newsracks. There was a Solo RFD newsrack at the Airport's prior terminal for two or three years. After the new terminal opened, Jacobsen placed a newsrack in a public area of the terminal without seeking the City's permission. Eight or nine months later, Bacon removed the newsrack to a nonpublic conference room. When Jacobsen complained, Bacon advised that it was Airport policy that newspapers be sold through the gift shop because "if things were to be sold in the airport there would have to be some revenue generated." Bacon suggested that if Jacobsen wished to sell his newspapers at the Airport he should contact the gift shop. Jacobsen instead filed this lawsuit, alleging that the Airport is a public forum and therefore banning newsracks violates his First Amendment rights.

At the time of the one-day trial, there were no other commercial newsracks in the new terminal. The City had denied two other newspapers permission to place newsracks in the terminal. One, USA Today, then distributed through the gift shop. The Rapid City Chamber of Commerce had been granted permission to place a

newsrack in the terminal to distribute free literature.  Disagreeing with Jacobsen, the district court held that the Airport is a nonpublic forum.  However, the court concluded that the City's ban on commercial newsracks was not a constitutionally reasonable restriction on speech because the City failed to prove that its asserted interests in operational efficiency, safety, security, aesthetics, and revenue justified the ban.  The court permanently enjoined the City "from enforcing a total ban of [Jacobsen's] newsracks from the Rapid City Airport."  The City appeals.  We review the constitutionality of its policy de novo.  See Bose Corp. v. Consumers Union, Inc., 466 U.S. 485, 508-09 (1984).

## I.

The First Amendment protects both the publication and distribution of protected material, even if the method of distribution involves public property.  See, e.g., City of Cincinnati v. Discovery Network, Inc., 507 U.S. 410, 430-31 (1993) (invalidating ban on newsracks on public property).  The extent to which government may constitutionally restrict protected expression on public property depends upon whether that property is a traditional public forum, a designated public forum, or a nonpublic forum.  As the district court recognized, a public airport terminal is a nonpublic forum for First Amendment purposes.  See International Soc'y for Krishna Consciousness, Inc. v. Lee, 505 U.S. 672, 680 (1992).  Accordingly, the City's newsrack policy "need only be reasonable, as long as [it] is not an effort to suppress the speaker's activity due to disagreement with the speaker's view."  Id. at 679.

"The reasonableness of the Government's restriction of access to a nonpublic forum must be assessed in the light of the purpose of the forum and all the surrounding circumstances."  Cornelius v. NAACP Legal Defense & Educ. Fund, Inc., 473 U.S. 788, 809 (1985).  The City contends that its interests in airport maintenance, safety, security, operational efficiency, aesthetics, and revenue justify its policy regarding commercial newsracks in the terminal.  As the district court noted, these are legitimate

governmental interests that the City may promote through reasonable means. See Clark v. Community for Creative Non-Violence, 468 U.S. 288, 297-99 (1984) (maintenance and public safety); Members of the City Council v. Taxpayers for Vincent, 466 U.S. 789, 805-07 (1984) (aesthetics); Heffron v. International Soc'y for Krishna Consciousness, Inc., 452 U.S. 640, 650 (1981) (public safety); Jamison v. City of St. Louis, 828 F.2d 1280, 1285 (8th Cir. 1987) (security and operational efficiency), cert. denied, 485 U.S. 987 (1988); Gannett Satellite Info. Network, Inc. v. Metropolitan Transp. Auth., 745 F.2d 767, 775 (2d Cir. 1984) (revenue). However, with the exception of its revenue rationale, which we will discuss in Part II, we agree with the district court that the evidence does not substantiate the City's purported reasons for banning commercial newsracks in the Airport terminal:

-- The City's contention that newsracks interfere with Airport maintenance was supported only by vague hearsay testimony of complaints by Airport cleaning crews.

-- The City's concern that newsracks are unstable or top heavy was not supported by evidence of injury from Jacobsen's newsracks. Design safety concerns should be addressed through "time, place, and manner" restrictions, not a total ban.

-- As to Airport security, the City's witnesses speculated that newsracks could be used to conceal a bomb. The district court concluded that this rationale was mere pretext because the terminal has many other places where a bomb could be hidden, such as waste containers and plant holders, and if anything, the glass door on the front of a newsrack makes it a less suitable place to hide a bomb. See Multimedia Publ'g Co. v. Greenville-Spartanburg Airport Dist., 991 F.2d 154, 162 (4th Cir. 1993) (labeling this security concern about newsracks specious).

-- The City claimed that newsracks in the terminal will negatively affect Airport operations, but the district court found that, even in high-traffic areas, the newsracks are sufficiently removed from pedestrian traffic to avoid obstructing or impeding

travelers.  See Lee v. International Soc'y for Krishna Consciousness, Inc., 505 U.S. 830, 831 (1992) (severe congestion at New York City airports did not justify a total ban on leafleting).

-- The City opined that newsracks detract from Airport decor, but the district court found that the appearance of Jacobsen's newsrack was not incompatible.  Airport decor may be regulated but would rarely if ever justify a total ban on protected First Amendment activity.

Looking at the issue more broadly, there is simply no evidence that placing Jacobsen's newsracks in public portions of the terminal will interfere with  the Airport's principal intended use, to facilitate air travel.  Moreover, as the City recognized by leasing terminal space to a gift shop, a restaurant, and a lounge, a certain amount of commercial retail activity is consistent with the intended uses of an airport terminal, and making newspapers reasonably available to air travelers is a compatible commercial activity.  See Lee, 505 U.S. at 688-89 (O'Connor, J., concurring); Multimedia Publishing, 991 F.2d at 163.  Newsracks are common in airport terminals, and Jacobsen has operated a newsrack in both Rapid City terminals without incident.

## II.

During the period in question, the City had granted the gift shop concessionaire the exclusive right to sell various consumer products in the new terminal, including "books, magazines, [and] newspapers."  Under the five-year Lease and Concession Agreement, the concessionaire paid the City a fixed annual base rent of $5.25 per square foot for leased terminal space, plus the greater of a minimum annual concession fee or eight percent of the gift shop's gross revenues, plus the gift shop's pro rata share of Airport utility and energy costs.  If the City must allow Jacobsen and other vendors to sell First Amendment protected materials in newsracks outside the gift shop, the concessionaire will lose revenues, making its exclusive contract less valuable.  That in turn will reduce the City's leverage in bargaining for terms such as minimum annual

concession fees and pro rata utility charges.  See Gannett Satellite Info. Network, Inc. v. Berger, 716 F. Supp. 140, 151-52 (D.N.J. 1989), rev'd in part on other grounds, 894 F.2d 61 (3d Cir. 1990).  The City argues that this revenue interest justifies its policy regarding commercial newsracks in the terminal.

This revenue issue is real and complex.  From a proprietary perspective, it is presumptively reasonable for the manager of a small airport to conclude that granting one gift shop concessionaire the exclusive right to sell consumer products in the terminal will both maximize that type of leasing revenues and minimize leasing costs by eliminating the need to negotiate with many different types of vendors.  As any frequent air traveler knows, large airports typically make a different decision, opting for retailing diversity. But these are decisions better made by airport managers than federal judges.  Thus, there is a cost, at least in decision-making autonomy, in deciding that the First Amendment precludes the City from enforcing its exclusive contract with the gift shop by refusing to allow commercial newsracks in the terminal.[1]

On the other side of the reasonableness equation, Jacobsen presented no evidence at trial of the impact that selling Solo RFD in the gift shop would have on its sales and circulation in the Airport terminal.  All we have on this issue is Jacobsen's unsupported assertion:  "The only thing that we found that works in a consistent basis and is economically feasible is basic newsrack sales."  And that testimony was directed at Solo RFD distribution generally.  Jacobsen did not claim that he has unsuccessfully tried distributing at a small airport's exclusive gift shop -- where one seller serves a geographically captive market.  Nor did he present data comparing Solo RFD sales through gift shops versus newsracks in locations comparable to the Rapid City Airport

---

[1]On this issue, Multimedia Publishing is distinguishable because there was no proof of lost revenue.  In addition, the court's assertion that imposing a charge for newsracks is a "simple" alternative for the airport, 991 F.2d at 161, is overly simplistic.

terminal.  The gift shop concessionaire testified that he was willing to sell Solo RFD in the gift shop, which is open fifteen of the sixteen hours per day that the Airport is open to the public.  On this record, the district court's finding that the gift shop is not a "viable alternative channel[] for the sale of Jacobsen's newspapers" was speculation, unsupported by the evidence, and based primarily on the court's mistaken view that the City is not entitled to "profit" from newspaper sales.[2]

Jacobsen tried this case on the premise that the Rapid City Airport terminal is a public forum and he therefore had an absolute First Amendment right to free use of the terminal for his newsracks.  This was a faulty premise.  The Airport is a nonpublic forum, and the City has a legitimate revenue interest in operating the Airport.  Restrictions furthering that interest must be reasonable but need not be the most reasonable restrictions.  See United States v. Kokinda, 497 U.S. 720, 730 (1990).  Nor does the First Amendment grant Jacobsen a right to the most cost-effective means of expression or distribution.  See Gannett, 745 F.2d at 774.  We are aware that newsracks are an effective means of distribution, "especially for low-budget, controversial" newspapers.  City of Lakewood v. Plain Dealer Publ'g Co., 486 U.S. 750, 762 (1988).  The City must take that into account in implementing its newsrack policy.  However, the City's policy thus far "has not been shown to deny access within the forum."  Heffron, 452 U.S. at 655.  Until Jacobsen comes forward with concrete

---

[2]The district court held that the City's rationale is inconsistent with cases holding "that the government may not profit by imposing a fee on a First Amendment right." However, those cases involved fees imposed by the government acting as sovereign. See Jacobsen v. Harris, 869 F.2d 1172, 1174 (8th Cir. 1989); Jacobsen v. Crivaro, 851 F.2d 1067, 1071 (8th Cir. 1988).  When a newspaper leases public property for commercial use, the First Amendment does not strictly limit the rent government may charge to its fully allocated costs as landlord.  If government is acting in a legitimate proprietary capacity, the relevant questions are whether a purportedly reasonable rent is a pretext for discrimination against protected First Amendment activity, and whether the rent unreasonably precludes such activity in light of the government's proprietary interest.  See Gannett, 745 F.2d at 774-75.

evidence that the City's facially reasonable policy regarding distribution of newspapers at the Rapid City Airport either is intended to discriminate or unreasonably fails to provide Solo RFD a viable means of airport distribution, he is not entitled to injunctive relief interfering with the City's proprietary revenue interest in operating the Airport for the benefit of air travelers.

The judgment of the district court is reversed, and the case is remanded with directions to dissolve the permanent injunction.

JOHN R. GIBSON, Circuit Judge, concurring in part and dissenting in part.

I concur in Part I of the court's opinion.

I dissent from Part II for the reason that it places the burden on Jacobsen with respect to the City's policy restricting his speech. Perry Ed. Assn. v. Perry Local Ed. Assn., 460 U.S. 37, 45-46 (1983) places this burden on the City.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.