**Harlan L. JACOBSEN, Editor/Publisher of Solo, RFD, Plaintiff,**

**v.**

**Richard L. HOWARD, Secretary of the State of South Dakota Transportation, individually and in that capacity; Jeff Holden, Director of South Dakota Highway Safety and Motor Vehicles, individually and in that capacity, Defendants.**

**No. CIV 94–4244.**

United States District Court,
D. South Dakota,
Southern Division.

Aug. 27, 2004.

Harlan L. Jacobsen Sioux Falls, SD, Pro se.

Richard J. Helsper, Helsper & Rasmussen, Brookings, Mark W. Barnett, Attorney General's Office, William J. Nevin, Dot, Legal Division, Pierre, SD, for Defendants.

## MEMORANDUM OPINION AND ORDER

### PIERSOL, Chief Judge.

Pending before the Court is Plaintiff's *pro se* Motion for Contempt of Court and Preliminary Injunction. (Doc. 32). Plaintiff asks this Court to hold the defendants in contempt of this Court's previous order permanently enjoining the defendants, Richard Howard and Jeff Holden, their officers, agents, servants, employees, attorneys, and all other persons in active concert or participation with them, from removing the plaintiff's newspaper vending machines from interstate highway rest areas within South Dakota. For the following reason, the motion is denied.

### BACKGROUND

Jacobsen publishes a newspaper, *Solo RFD*, for single adults, that he primarily distributes through vending machines. In July 1991, Jacobsen placed a newspaper vending machine at the Interstate 29 rest area near Vermillion, South Dakota. Several weeks later, an independent contractor with the South Dakota Department of Transportation removed the vending machine from the rest area and placed it in storage. Jacobsen brought this lawsuit seeking to enjoin the enforcement of the state statutes under which the vending machine was removed and to declare the statutes unconstitutional. On November 6, 1995, this Court held that the three statutes in question were unconstitutional as applied because they banned all commercial activities at interstate rest areas and unreasonably interfered with the constitutionally protected activity of newspaper distribution. The state officers were enjoined from enforcing the statutes. The Eighth Circuit affirmed on this ground, but vacated the portion of this Court's opinion holding the statutes overbroad. This Court's November 6, 1995 Order states that the injunction applies as long as the defendants rely upon SDCL §§ 31–8–16, 31–29–83 and 31–32–13 as authority for removing the vending machines. Defendants say that they did not rely on the South Dakota statutes in question when they recently relocated Jacobsen's newsracks, which is the subject of this pending mention.

On October 2, 2003, Jacobsen filed the currently pending Motion for Contempt of Court and Preliminary Injunction, alleging that the defendants are in violation of this Court's November 6, 1995 injunction order. Jacobsen contends that, at the Lewis and Clerk Rest Area on Interstate 90 at Chamberlain, defendants moved his newsracks "off the public sidewalk near the entrance where 100% of foot traffic exists to well over 50 foot from such essential sidewalk foot traffic." Defendants assert that the newsracks were directly in front of a mural depicting the Lewis and Clark expedition designed to recognize and educate visitors in an aesthetically pleasing manner about the adventure of Lewis and Clerk in South Dakota. The rest area has a series of interpretive displays and exhibits depicting the Lewis and Clark expedition through what is now South Dakota. According to the defendants, plaintiff's newspaper vending machines obscured the view of the mural and partially obstructed the sidewalk immediately next to the building entrance. Over the course of several weeks from May through August 2003, at least twenty-two comment cards were received from visitors complaining about the location of the vending machines due to the fact that they partially obscured the

mural, detracted from the beauty of the mural and interfered with photographs the visitors wanted to take of the mural. Plaintiff was advised of these concerns.

A concrete pad was poured for the vending machines along the same sidewalk near the tourist information kiosk, approximately 25 feet from their location in front of the mural. The pad is near the pop machines and water faucet, between the informational kiosk and the main entrance to the building. By letter dated September 8, 2003, plaintiff was asked to move his vending machines to the concrete pad. He refused to do so. All newspaper vending machines, including Jacobsen's, were then moved to the concrete pad. This motion followed. Plaintiff claims this location will effectively eliminate distribution of his newspaper in South Dakota.

## DISCUSSION

The factors to consider when determining whether a preliminary injunction is appropriate are (1) threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties; (3) the probability that the movant will succeed on the merits; and (4) the public interest. *Dataphase v. CL Systems, Inc.,* 640 F.2d 109, 113 (8th Cir. 1981).

### A. *Irreparable Harm*

█ Jacobsen believes his sales will decrease at the Chamberlain rest area because his newsracks have been moved, and that he might be forced to stop distribution in South Dakota completely. That would undoubtedly be an important loss to Jacobsen, but he has submitted no evidence to support his belief that the loss has occurred or will occur in the future. Unlike situations where preliminary injunctions have been granted to keep a business from going under, Jacobsen has not established that he is in danger of losing his entire business which encompasses distribution of publications in states other than South Dakota. It is possible that, even with a preliminary injunction in this case, the business in South Dakota might be lost. Jacobsen asserts that he distributes two to three publications in other states, compared to two publications distributed in South Dakota "since there is not enough traffic in South Dakota to make sale of the others worth the expense." He admittedly quit distributing his publications at five South Dakota rest areas this year because the sales did not cover his expenses, including gasoline, wages and motel. Based on all these considerations, irreparable harm absent a preliminary injunction has not been established.

Although the Court's analysis need go no further in order to deny Jacobsen's motion for a preliminary injunction, the Court will analyze the probability of Jacobsen's success merits.

### B. *Probability of Success on the Merits*

█ The distribution of newspapers has been accorded protection by the First Amendment. *See, e.g., Jacobsen v. Rapid City,* 128 F.3d 660, 662 (8th Cir.1997). Thus a government (here, the State) is subject to certain limitations on the type and content of the restrictions it may place on this activity. The degree of protection provided by the Constitution depends on the character of the property at issue. In this case the property at issue is an interstate rest area. In its November 1995 opinion, this Court held that interstate rest areas are nonpublic fora. Accordingly, the regulation of newsracks "need only be reasonable, as long as [it] is not an effort to suppress the speaker's activity due to disagreement with the speaker's view." *Id.,* quoting *International Soc'y for Krishna Consciousness, Inc., v. Lee,* 505 U.S. 672, 112 S.Ct. 2701, 120 L.Ed.2d 541 (1992).

Put another way, the State may regulate expression on non-content grounds through "reasonable time, place, and manner restrictions."

■ The Supreme Court cases teach that the "principal inquiry in determining content neutrality in speech cases generally and in time, place, or manner cases in particular, is whether the government has adopted a regulation of speech because of disagreement with them message it conveys." *Ward v. Rock Against Racism,* 491 U.S. 781, 791, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989). Under this test, the State's action in moving all newsracks to a concrete pad appears content-neutral. It did not differentiate based on the content of the speech. *Cf. City of Cincinnati v. Discovery Network, Inc.,* 507 U.S. 410, 428–429, 113 S.Ct. 1505, 123 L.Ed.2d 99 (1993)(holding ban on newsracks to be content-based because determining whether a newsrack fell within ban required reference to a publication's content). Like the ban on posted signs which the Supreme Court upheld in *Members of City Council of City of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 804–805, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984), the State's action was taken for aesthetic reasons and was unrelated to the suppression of ideas. Jacobsen does not contradict this.

■ The Court must next determine the reasonableness of the State's content-neutral action. Restrictions on speech must be reasonable, but "[they] need not be the most reasonable or the only reasonable limitation[s]." *United States v. Kokinda,* 497 U.S. 720, 730, 110 S.Ct. 3115, 111 L.Ed.2d 571 (1990)(plurality opinion). The Supreme Court has recognized aesthetics as a significant government interest legitimately furthered through regulating First Amendment expression in various contexts. *See, e.g., Taxpayers for Vincent,* 466 U.S. at 804–805, 104 S.Ct. 2118. The Eighth Circuit has upheld permit and in-surance requirements as well as restrictions on the size, type and location of newsracks. *Jacobsen v. Harris,* 869 F.2d 1172, 1174 (8th Cir.1989). The photographs presented by the defendants show that the newsracks are out of keeping with the artistic character of the Lewis and Clark mural. The comments from visitors to the rest area proves that the newsracks blocked the view of the artwork and clearly detracted from its character and value. Moving the newsracks to a concrete pad 25 feet away and still adjacent to the sidewalk allows distribution of the newspaper to continue, while preserving the aesthetic value of the mural. It is a reasonable plan that is constitutionally permissible.

### CONCLUSION

Application of the *Dataphase* factors in this case leads to the conclusion that Jacobsen's motion for preliminary injunction should be denied. In addition, the defendants have not violated the permanent injunction and will not be held in contempt. Accordingly,

IT IS ORDERED that the Plaintiff's *pro se* Motion for Contempt of Court and Preliminary Injunction (Doc. 32) is denied.